UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**Shannon Stone,**

        Plaintiff,

                                      **DEMAND FOR JURY TRIAL**

vs.                                  Case No. 21-      -CD

                                            Hon.

**Zeta Global Corp.,**
a Delaware corporation,

        Defendant.
_____

**GASIOREK, MORGAN, GRECO,**
**McCAULEY & KOTZIAN, P.C.**
BY:  RAY CAREY (P 33266)
Attorneys for Plaintiff
30500 Northwestern Highway, Suite 425
Farmington Hills, MI 48334
(T) 248-865-0001 (F) 248-865-0002
Rcarey@gmgmklaw.com
_____

## COMPLAINT AND JURY DEMAND

Plaintiff Shannon Stone ("Plaintiff" or "Ms. Stone"), by her attorneys, GASIOREK, MORGAN, GRECO, McCAULEY & KOTZIAN P.C., for her Complaint against Defendant Zeta Global Corp ("Zeta"). states as follows:

1.     This is an action by Plaintiff Shannon Stone against Defendant Zeta Global Corp. for unequal pay, retaliation, and interference in violation of the Equal Pay Act of 1963, 29 U.S.C. §§ 201, et seq., *see* 29 U.S.C. § 206, 29 U.S.C. §215(a)(3); for discrimination against Plaintiff on account of her sex,

interference with and deprivation of Plaintiff's right to be free from discrimination on account of her sex, hostile work environment based on sex, and retaliation against Plaintiff because of her complaints about and opposition to Zeta's acts of discrimination against Plaintiff and others on account of sex and toleration of a work environment hostile to women because of their sex in violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), M.C.L.A. §§37.2101, *et seq.*; violation of public policy, breach of contract, promissory estoppel, unjust enrichment, fraud, misrepresentation and silent fraud; and conversion in violation of Michigan common law, and conversion in violation of M.C.L.A. 600. 2919a. Plaintiff's claims arise out of the circumstances leading up to and including the constructive discharge of Plaintiff from her former Zeta employment, effective September 30, 2021.

## **PARTIES**

2.     Ms. Stone is an individual who currently resides in Royal Oak, County of Oakland, State of Michigan, and formerly was employed by Zeta in Royal Oak, County of Oakland, state of Michigan.

3.     Zeta is a Delaware corporation that is registered to do and does business in Michigan, with its offices and principal place of business located at 3 Park Avenue, 33[n1]Floor, New York, New York 10016.

## JURISDICTION AND VENUE

4.     The amount in controversy exceeds $75,000 exclusive of interest and costs.

5.     This Court has subject matter jurisdiction over Plaintiff's claims under and pursuant to 28 USC § 1331 (federal question jurisdiction), 28 U.S.C. § 1332 (diversity jurisdiction), 28 U.S.C. §§ 1337, 1343 (civil rights), and 29 USC §216(b) (equal pay).

6.     This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over Plaintiff's state law claims for ELCRA violations.

7.     This Court has personal jurisdiction over Defendant because it maintains offices, engages in regular and systematic business and other activities, and its resident agent is located within the Eastern District of Michigan and the acts attributed to Defendant that give rise to Plaintiff's claims occurred and adversely affected her within the Eastern District of Michigan.

8.      This Court has personal jurisdiction over Defendant because Plaintiff performed the duties and responsibilities of her various Zeta positions at all times relevant from her office in Royal Oak, Michigan.

9.     Venue is proper in this district court pursuant 28 U.S.C. §1391(b) and (c) because Plaintiff resides within the Eastern District of Michigan; Defendant maintains offices, engages in regular and systematic business and

other activities, and its resident agent is located within the Eastern District of Michigan; and the events that give rise to Plaintiff's claims occurred or had consequences on Plaintiff within the Eastern District of Michigan.

10.    Venue also is convenient in this judicial district.

## COMMON FACTUAL ALLEGATIONS

11.    Zeta purports to be a leading data-driven, cloud-based marketing technology company that empowers enterprises to acquire, grow, and retain customers at a lower cost than traditional marketing mechanisms.

12.    Zeta claims that its marketing platform is the largest omnichannel platform available and that it employs sophisticated artificial intelligence to analyze billions of structured and unstructured data points to predict customer behavior for those enterprises which retain it for this purpose.

13.    Ms. Stone commenced employment with Zeta on April 30, 2015, and had been employed by Zeta as Vice President of Client Success for its ZX Division ("ZX") until January 11, 2021, when she was wrongfully demoted to a client development or account management position, a role she held until September 30, 2021, when her Zeta employment was terminated.

14.    As Vice President of Client Success for Zeta's ZX Division, Ms. Stone was employed by Zeta in accordance with the terms of an agreement which provided, and she otherwise legitimately expected, that she would be treated

the same as male Zeta employees with respect compensation, commissions, bonus or other incentive compensation for business procured from Zeta new and current clients.

15.     As Zeta's Vice President of Client Success for ZX, and until Mr. Matt Martella, who became President of ZX in January, 2020, wrongfully made changes to and diminished her duties and responsibilities, Ms. Stone: reported to the President of ZX; managed the entire ZX client portfolio; was the primary client development and company operations lead; partnered with respect to business development, growth plans for all client accounts, revenue objectives for all client accounts,  client strategy and new solutions for prospective sale to clients, coordination with Zeta's business development team to manage client related transitions, revenue forecasting in collaboration with Zeta's finance team, strategic planning with Zeta's senior leadership team, coordination with business units outside of the ZX sales team, and process and team development;  managed ZX's U.S. based client success and India based operations teams; and effectively developed, supported, and supervised ZX client development representatives.

16.     During her tenure with Zeta, Ms. Stone continually procured new business from ZX prospects and clients for which she had been responsible and grew ZX top client revenue and business from a two million three hundred ninety-five thousand dollars to a sixty-nine million, five

hundred-thousand-dollar annual run rate, an increase of two thousand eight hundred and one percent.

17.     Ms. Stone further excelled in her role, including: procuring one of the largest client contracts in Zeta history; she was the recipient of Zeta's Excellence Award in 2019 and 2020 and received other recognition of her success as Vice President of Client Success for ZX; developed ZX's operational process that integrated and led all departments and disciplines by which all clients and accounts followed; and led a cross-functional team that reinvented how Zeta created value for its customers.

18.     Despite being continuously and intentionally denied the necessary resources that were desperately needed to manage a seventy-million-dollar enterprise that Ms. Stone was instrumental in building, growing, and maintain, Ms. Stone persevered with meager resources, virtually no support, and a tiny team, which is why some in Zeta referred to her as the "unicorn."

19.     During her Zeta tenure, Ms. Stone reported to four successive ZX presidents, she was exposed to an abusive, male dominated work culture and environment that was hostile to women, and she experienced discrimination against her on account of her sex with respect to compensation and

commissions for which she should have been eligible and other terms and conditions of her Zeta employment.

20.    Despite the significant accomplishments that Ms. Stone achieved against all odds, which were acknowledged by Zeta leadership and the entire Company, Mr. Martella, who was struggling in his role as ZX's President, perpetuated and exacerbated the discrimination against Ms. Stone on account of her sex when he hired his male friend and former colleague, Mr. Jason Baadsgaard, as the ZX Senior Vice President Client Development, after denying Ms. Stone's request that she be assigned to and without otherwise allowing Ms. Stone the opportunity to apply, be interviewed, and/or considered for the ZX Senior Vice President Client Development position although Ms. Stone had been performing and excelling in this role since October, 2018.

21.    Mr. Martella falsely stated to Ms. Stone that no one was to be hired for the ZX Senior Vice President Client Development position when he denied her request that she be assigned to role.

22.    Mr. Martella denied Ms. Stone and selected Mr. Jason Baadsgaard as the ZX Senior Vice President Client Development position although no job posting, job description, or job requirements, roles, and responsibilities for the Senior Vice President Client Development position had been previously or ever published or provided to Ms. Stone.

23.     Mr. Martella also denied Ms. Stone and selected Mr. Jason Baadsgaard as the ZX Senior Vice President Client Development position because of objections Ms. Stone previously raised to Zeta leadership about the manner in which  some ZX client reports were being generated, the inaccuracy of data reported to ZX clients pertaining to Zeta's performance and number of prospective customer contacts that were attributable to Zeta's marketing efforts, a practice for which Ms. Stone's acquiescence was required,  and her signing Master Service Agreements and Statements of Work on behalf of Zeta under the circumstances.

24.     Zeta leadership had reported the concerns raised by Ms. Stone to at least Mr. Steven Gerber, Zeta's President and Chief Operating Officer, who authorized the hiring of Mr. Baadsgaard and his assumption of most of Ms. Stone's duties and responsibilities unbeknownst to Ms. Stone at the time because of the objections Ms. Stone had raised so he could oversee the "fixing" of ZX client reports and data to ensure that these conformed with or exceeded client expectations even when the data disclosed otherwise.

25.     Mr. Martella treated Ms. Stone differently than a male colleague who was allowed to apply, was interviewed, and/or considered for the lead Solution Consultants position reporting directly to Mr. Martella when he refused to allow Ms. Stone comparable consideration, i.e., to apply, be

interviewed, and/or considered for the ZX Senior Vice President Client Development position.

26.   The ZX Senior Vice President Client Development position had been Ms. Stone's role with a different title since October, 2018.

27.   Given her remarkable ZX track record and performance, her strong ZX client relationships, and the fact Ms. Stone had been performing the duties and responsibilities of and acting in the Senior Vice President Client Development role since 2018, all with a fraction of the resources provided to Mr. Baadsgaard, Ms. Stone was clearly qualified for and more qualified than or at least as qualified as Mr. Baadsgaard for the ZX Senior Vice President Client Development position.

28.   At the time, Ms. Stone was one of only two female vice-presidents of ZX and there were no women serving as ZX senior vice presidents.

29.   Most of Ms. Stone's duties and responsibilities were assigned to Mr. Baadsgaard after he commenced employment as the ZX Senior Vice President Client Development position because of Ms. Stone's sex, to purportedly justify the higher compensation and benefits tendered to him in contrast to the lesser compensation and benefits Ms. Stone had been receiving while she performed the same duties and responsibilities with a mere fraction of the resources that became associated with Mr. Baadsgaard's ZX Senior Vice

President Client Development position, and to facilitate the "fixing" of ZX client reports and data to ensure that these conformed with or exceeded client expectations even when the data disclosed otherwise.

30.     While Zeta leadership was not transparent with Ms. Stone about and withheld client related information from her, Ms. Stone raised concerns about the manner in which some ZX client reports were being generated, the inaccuracy of data reported to ZX clients pertaining to Zeta's performance and number of prospective customer contacts that were attributable to Zeta's marketing efforts, a practice for which Ms. Stone's acquiescence was required and for which Ms. Stone was warned not to question, which were motivating factors determinative of the decision to reassign most of Ms. Stone's duties and responsibilities to Mr. Baadsgaard.

31.     Mr. Baadsgaard received a total compensation plan and benefits that substantially exceeded what Ms. Stone had been receiving after he commenced employment as the ZX Senior Vice President Client Development position, confirming that Ms. Stone had been undercompensated because of her sex and that she was the victim of unequal pay practices at Zeta based on sex while she served the Vice President of Client Success for ZX and thereafter.

32.     Ms. Stone also had been paid less than her other male peers and denied commissions for new business she had procured equal or comparable to what men received for business they had procured from current and new ZX clients throughout her employment although her contributions to Zeta and ZX greatly exceeded theirs.

33.     In July or August, 2020, after Ms. Stone learned that Mr. Martella had hired Mr. Baadsgaard as the ZX Senior Vice President Client Development, she complained to Mr. Martella about his discriminatory hiring of Mr. Baadsgaard and refusal to allow her to apply, be interviewed, and/or considered for the position.

34.     Mr. Martella threatened Ms. Stone "to get on board or move on" in retaliation for her complaints concerning Mr. Martella's discriminatory hiring of Mr.  Baadsgaard and refusal to allow her to apply, be interviewed, and/or considered for the ZX Senior Vice President Client Development position and in response to her then contemporaneous complaint to him about the discriminatory re-assignment without cause of the duties and responsibilities she previously had performed to Mr. Baadsgaard.

35.     During the period since August, 2020, Mr. Martella and other men, some of whom reported to him, continued to perpetuate the discriminatory treatment of women based on their sex, including Ms. Stone, and the abusive,

male dominated work culture and environment that was hostile to women, including Ms. Stone, because of their sex.

36.     During ZX business development team meetings since August, 2020, that were attended by Ms. Stone and Ms. Melissa Racklin, Mr. Martella and another male ZX executive hired by Mr. Martella to whom Ms. Racklin reported, routinely and publicly demeaned Ms. Racklin's job performance because of her sex although she was successfully closing business deals for the benefit of ZX while male development team members were not.

37.     Upon information and belief, during the period since August, 2020, Ms. Racklin also had been paid less than her other male peers and denied commissions for new business she had procured equal of comparable to what men received for business they had procured from ZX clients although her contributions to Zeta and ZX greatly exceeded theirs and many of her duties and responsibilities had been transferred to men to purported justify the higher compensation tendered to them.

38.     During the period since August, 2020, Mr. Martella formed a "secret performance counsel" which was comprised of only Mr. Baadsgaard and other men, intentionally precluding Ms. Stone's participation, and was responsible for addressing any concerns raised by ZX clients for which Ms. Stone had been responsible about ZX's performance and "fixing" the data to

be reported to ZX clients pertaining to Zeta's performance and number of prospective customer contacts that were attributable to Zeta's marketing efforts to ensure that it conformed to or exceeded customer expectations.

39.    When Ms. Stone complained to Mr. Baadsgaard about the "secret performance counsel" and why she was excluded from it, Mr. Baadsgaard told her, "It was Martella's show."

40.    During the period since August, 2020, Mr. Martella and Mr. Baadsgaard continued the discriminatory treatment of Ms. Stone based on her sex with respect to compensation and other terms and conditions of Zeta employment; perpetuated the abusive, male dominated work culture and environment that was hostile to Ms. Stone because of her sex; and retaliated against her because of her complaints to Mr. Martella about the hiring of Mr. Baadsgaard for the ZX Senior Vice President Client Development position, Mr. Martella's refusal to allow her to apply for and/or be interviewed and considered for the position, and Mr. Martella's re-assignment of many of Ms. Stone's duties and responsibilities without cause to Mr. Baadsgaard after he commenced employment in the position when:

A.    Mr. Martella convened various meetings, including "secret performance counsel" meetings, with Mr. Baadsgaard and other men pertaining to client accounts for which Ms. Stone had responsibility

intentionally precluding her participation in the meetings and any input from her concerning the clients and their accounts;

B.     Mr. Martella routinely gave credit to himself and other men for Ms. Stone's client development and sales achievements for which they either had no involvement or for which Ms. Stone had primary responsibility; and

C.     Mr. Baadsgaard falsely accused Ms. Stone of deficient client account management on one or more occasions although she had been excluded from internal meetings when matters pertaining to client accounts for which Ms. Stone had responsibility ostensibly had been discussed and Mr. Baadsgaard had sought no input from her concerning the clients and any purported issues of concern pertaining to their accounts.

41.    On November 2, 2020, Ms. Stone complained directly to Mr. Steven Gerber, Zeta's President and Chief Operating Officer, about:

A.     Zeta's pattern and practice of discriminatory treatment of women based on their sex, including Ms. Stone, with respect to compensation and other terms and conditions of employment and the abusive, male dominated work culture and environment that was hostile to women, including Ms. Stone, because of their sex which was being perpetuated by Mr. Martella and other men, some of whom reported to him;

B.      Mr. Martella's discriminatory hiring of Mr. Baadsgaard for the ZX Senior Vice President Client Development position, a role she had been excelling in since October, 2018, his refusal to allow her to apply, be interviewed, and considered for the position, and re-assignment of most of Ms. Stone's duties and responsibilities without cause to Mr. Baadsgaard after he commenced employment in the position;

C.      the discriminatory treatment of Ms. Stone based on her sex with respect to compensation and other terms and conditions of employment;

D.      the discriminatory change in Ms. Stone's ZX reporting relationship;

E.      the discrimination on account of sex and retaliation for complaints Ms. Stone made to Mr. Martella that she experienced since August, 2020, when Mr. Martella convened various meetings with Mr. Baadsgaard and other men pertaining to client accounts for which Ms. Stone had responsibility without including her in the meetings and receipt of any input from her concerning the clients and their accounts and Mr. Martella routinely gave credit to himself and men for Ms. Stone's client development and sales achievements for which they either had no involvement or for which Ms. Stone had primary responsibility;

F.      the discrimination on account of sex and retaliation for complaints she made to Mr. Martella that Ms. Stone experienced since August, 2020, when

Mr. Baadsgaard falsely accused Ms. Stone of deficient client account management on one or more occasions although she had been excluded from internal meetings when matters pertaining to client accounts had been discussed and Mr. Baadsgaard had sought no input from her concerning the clients and any purported issues of concern pertaining to their accounts;

G.    the discrimination on account of sex and retaliation for complaints she made to Mr. Martella that Ms. Stone experienced on and since January 11, 2021, when Mr. Martella and Mr. Baadsgaard demoted her to client development or account management roles with respect to the clients for which Ms. Stone previously had leadership responsibilities;

H.    the inadequate resources that had been available to Ms. Stone, that there were only 24 hours in a day and 7 days in a week, and she had already been working almost all of them for the past few years in order to handle all of her roles and responsibilities while she was also was instrumental in building, growing, and maintaining the company; and

I.    how each of these intolerable acts and circumstances had caused Ms. Stone to experience severe mental and emotional distress that adversely impacted her job and compelled her to complain and seek help.

42.    Mr. Gerber did not investigate, respond to, or otherwise take remedial or corrective action in response to Ms. Stone's complaints.

43.    Instead, Mr. Gerber told Ms. Stone that he allowed Mr. Martella to hire his friend, Mr. Baadsgaard, because he "couldn't allow another ZX president to fail" and that Mr. Baadsgaard was only hired on a temporary basis.

44.    Ms. Stone received no notice of job performance deficiencies or warnings of any kind about her job performance, and she was not subjected to discipline of any kind, a negative performance evaluation of any kind, or a correction action or performance improvement plan of any kind at any time before or since January 11, 2021.

45.    On or about January 11, 2021, Mr. Martella and Mr. Baadsgaard demoted Ms. Stone to a client development representative role for 2 of her former 28 accounts for which she previously had leadership responsibilities and an account manager role for her other 26 accounts for which she previously had leadership responsibilities, which in many instances required her to provide support to junior staff who had been reporting to her, because of her sex and her complaints to Mr. Martella about the hiring of Mr. Baadsgaard for the ZX Senior Vice President Client Development position, Mr. Martella's refusal to allow her to apply for and/or be interviewed and considered for the position, and Mr. Martella's re-assignment of many of Ms. Stone's duties and responsibilities without cause to Mr. Baadsgaard after he commenced employment in the position.

46.    Mr. Martella and Mr. Baadsgaard confirmed their discriminatory and retaliatory demotion of Ms. Stone on February 1, 2021, when they issued the ZX roles and responsibilities consistent with what had been depicted on the previously disseminated January 11, 2021 organization chart which identified the roles and responsibilities of each ZX client development team member on a client-by-client basis and relegated Ms. Stone to client development or account management roles with respect to the clients for which Ms. Stone previously had leadership responsibilities.

47.    Mr. Martella and Mr. Baadsgaard's  discriminatory treatment of Ms. Stone based on her sex with respect to compensation and other terms and conditions of Zeta employment since August, 2020; Ms. Stone's exposure to the abusive, male dominated work culture and hostile work environment; the threats and retaliation against Ms. Stone because of her complaints to Mr. Martella about the discriminatory hiring of Mr. Baadsgaard for the ZX Senior Vice President Client Development position; and the discriminatory and retaliatory demotion of Ms. Stone caused Ms. Stone to experience severe mental and emotional distress that adversely impacted her job and compelled her to complain and seek help.

48.    On February 9, 2021, Ms. Stone again complained directly to Mr. Steven Gerber, Zeta's President and Chief Operating Officer, about:

A.      Zeta's pattern and practice of discriminatory treatment of women based on their sex, including Ms. Stone, with respect to compensation and other terms and conditions of employment and the abusive, male dominated work culture and environment that was hostile to women, including Ms. Stone, because of their sex which was being perpetuated by Mr. Martella and other men, some of whom reported to him;

B.      Mr. Martella's discriminatory hiring of Mr. Baadsgaard for the ZX Senior Vice President Client Development position, a role she had been excelling in since October, 2018, his refusal to allow her to apply, be interviewed, and/or considered for the position, and re-assignment of most of Ms. Stone's duties and responsibilities without cause to Mr. Baadsgaard after he commenced employment in the position;

C.      the discriminatory treatment of Ms. Stone based on her sex with respect to compensation and other terms and conditions of employment;

D.      the discriminatory change in Ms. Stone's ZX reporting relationship;

E.      the discrimination on account of sex and retaliation for complaints Ms. Stone made to Mr. Martella that she experienced since August, 2020, when Mr. Martella convened various meetings with Mr. Baadsgaard and other men pertaining to client accounts for which Ms. Stone had responsibility without including her in the meetings and receipt of any input from her concerning the

clients and their accounts and Mr. Martella routinely congratulated only men for Ms. Stone's client development and sales achievements for which they either had no involvement or for which Ms. Stone had primary responsibility;

F.       the discrimination on account of sex and retaliation for complaints she made to Mr. Martella that Ms. Stone experienced since August, 2020, when Mr. Baadsgaard falsely accused Ms. Stone of deficient client account management on one or more occasions although she had been excluded from internal meetings when matters pertaining to client accounts and Mr. Baadsgaard had sought no input from her concerning the clients and any purported issues of concern pertaining to their accounts;

G.       the discrimination on account of sex and retaliation for complaints she made to Mr. Martella that Ms. Stone experienced on and since January 11, 2021, when Mr. Martella and Mr. Baadsgaard demoted her to client development or account management roles with respect to the clients for which Ms. Stone previously had leadership responsibilities;

H.       the inadequate resources that had been available to Ms. Stone, that there were only 24 hours in a day, 7 days in a week, and she had already been working almost all of them for the past few years in order to handle all of her roles and responsibilities while she was also was instrumental in building, growing, and maintaining the company; and

I. how the "good old boys club" that permeated Zeta's leadership and transcended Zeta's culture has escalated and had become intolerable; and

J.     how each of these intolerable acts and circumstances had caused Ms. Stone to experience continuing and severe mental and emotional distress that adversely impacted her job and compelled her to complain and seek help.

49.     Mr. Gerber did not investigate, respond to, or otherwise take remedial or corrective action in response to Ms. Stone's complaints.

50.     Instead, Mr. Gerber referred Ms. Stone to Zeta's Senior Vice President, Assistant General Counsel, Ms. Denise Lang.

51.     Ms. Stone conferred with Ms. Lang on or about February 11, 2021, and reiterated to Ms. Lang her complaints about:

A.     Zeta's pattern and practice of discriminatory treatment of women based on their sex, including Ms. Stone, with respect to compensation and other terms and conditions of employment and the abusive, male dominated work culture and environment that was hostile to women, including Ms. Stone, because of their sex which was being perpetuated by Mr. Martella and other men, some of whom reported to him;

B.     Mr. Martella's discriminatory hiring of Mr. Baadsgaard for the ZX Senior Vice President Client Development position, a role she had been excelling in since October, 2018, his refusal to allow her to apply, be

interviewed, and/or considered for the position, and re-assignment of most of Ms. Stone's duties and responsibilities without cause to Mr. Baadsgaard after he commenced employment in the position;

C.    the discriminatory treatment of Ms. Stone based on her sex with respect to compensation and other terms and conditions of employment;

D.    the discriminatory change in Ms. Stone's ZX reporting relationship;

E.    the discrimination on account of sex and retaliation for complaints Ms. Stone made to Mr. Martella that she experienced since August, 2020, when Mr. Martella convened various meetings with Mr. Baadsgaard and other men pertaining to client accounts for which Ms. Stone had responsibility without including her in the meetings and receipt of any input from her concerning the clients and their accounts and Mr. Martella routinely congratulated only men for Ms. Stone's client development and sales achievements for which they either had no involvement or for which Ms. Stone had primary responsibility;

F.    the discrimination on account of sex and retaliation for complaints she made to Mr. Martella that Ms. Stone experienced since August, 2020, when Mr. Baadsgaard falsely accused Ms. Stone of deficient client account management on one or more occasions although she had been excluded from internal meetings when matters pertaining to client accounts and Mr.

Baadsgaard had sought no input from her concerning the clients and any purported issues of concern pertaining to their accounts;

G.      the discrimination on account of sex and retaliation for complaints she made to Mr. Martella that Ms. Stone experienced on and since January 11, 2021, when Mr. Martella and Mr. Baadsgaard demoted her to client development or account management roles with respect to the clients for which Ms. Stone previously had leadership responsibilities; and

H.      how each of these intolerable acts and circumstances had caused Ms. Stone to experience continuing and severe mental and emotional distress that adversely impact her job and compelled her to complain and seek help.

52.     Ms. Lang did not investigate, respond to, or otherwise take remedial or corrective action in response to Ms. Stone's complaints.

53.     Instead, Ms. Lang abdicated her legal obligations and irresponsibly presented Ms. Stone with three options from which to choose concerning her complaints: whether no further action should be taken concerning her complaints; whether investigation of the complaints should be commenced with possible retaliatory repercussions; or whether human resources should facilitate and attend meetings between Mr. Martella and Ms. Stone about her complaints with possible retaliatory repercussions.

54.    In this regard, during her discussions and communications with Ms. Stone, Ms. Lang dismissed Ms. Stone's complaints, cautioning her that "there was nothing that warranted an investigation," warning Ms. Stone that she "could be subject to adverse behavior or consequences if the matter was pursued further," and acknowledging that "although retaliation is against the law, it could happen."

55.    Mr. Lang also told Ms. Stone that she would advise her of the reasons why she was not considered for the ZX Senior Vice President Client Development position and how that position was distinguishable from hers, but she never did.

56.    Ms. Lang's comments further intimidated and exacerbated the severe mental and emotional distress that Ms. Stone had been experiencing since August, 2020, because of the treatment from Mr. Martella, the abusive, male dominated work culture and environment that was hostile to Ms. Stone because of her sex, and the discrimination on account of her sex and retaliation because of complaints she previously made to Mr. Martella that Ms. Stone experienced with respect to compensation, other terms and conditions of employment, and her demotion.

57.    On February 16, 2021, Ms. Stone notified Ms. Lang that she was afraid to file a formal complaint with Zeta Human Resources about the threats,

hostile work environment, and acts of discrimination and retaliation she discussed with Ms. Lang on February 11, 2021, because of Ms. Lang's intimidating and dismissive response to Ms. Stone's complaints and her warnings to Ms. Stone about the potential for retaliation had a human resources investigation of Ms. Stone's complaints been conducted.

58.   On March 18, 2021, Ms. Stone complained again to Mr. Gerber about the discrimination, retaliation, and abusive and hostile work environment to which she had been subjected and the failure of Ms. Lang or any other Zeta or ZX executive or human resources representatives to investigate, address, and otherwise take effective remedial or corrective action in response to her complaints and she requested that she be officially promoted to a Senior Vice President position, a role she had been excelling in since October, 2018, in conjunction with her previous Zeta duties and responsibilities,  her reporting relationship be restored, and her client relationships and responsibilities be reinstated with a higher commission rate.

59.   On March 18, 2021, Ms. Stone also told Mr. Gerber she could no longer continue to operate under her current circumstances and that if he valued her, her unwavering dedication, and the tremendous growth she achieved for Zeta, he needed to elevate her to the senior vice president position and make other changes to the terms and conditions of her employment, but

because of Mr. Baadsgaard's hiring, Mr. Gerber advised her that he would only offer her a group vice president position.

60.     Six days later, on March 24, 2021, Ms. Stone was notified that her requests had not been granted, but instead she had been given an undefined group vice president position, effective April 1, 2021, which she later learned was completely hollow and was but a maintenance of the discriminatory and retaliatory status quo.

61.     The change in Ms. Stone's job title was a superficial effort to merely placate her because Zeta executives, human resources and other representatives had abdicated their obligations to investigate, address, and otherwise take effective remedial or corrective action in response to her complaints about the discrimination, retaliation, and abusive and hostile work environment to which she had been subjected at Zeta, the letter notifying Ms. Stone of the title change does not specify who made the decision or why it was made, and Ms. Stone's diminished roles, duties and responsibilities thereafter otherwise remained exactly as specified on the ZX organization chart issued on January 11, 2021, and as depicted in the roles and responsibilities issued on February 1, 2021.

62.     The change in Ms. Stone's job title was a superficial effort to merely placate her because Mr. Gerber had already wrongfully authorized Mr.

Martella's discriminatory hiring of Mr. Baadsgaard to effectively replace Ms. Stone and to assume most of her duties and responsibilities because of her sex, the objections Ms. Stone had raised, and his intent that Mr. Baadsgaard would oversee the "fixing" of ZX client reports and data to ensure that these conformed with or exceeded client expectations even when the data disclosed otherwise.

63.    The perfunctory and empty change in Ms. Stone's job title under the circumstances perpetuated the hostile work environment on account of sex, acts of discrimination because of sex, and retaliation against Ms. Stone and exacerbated the severe mental and emotional distress that she had been experiencing.

64.    Ms. Stone felt compelled to resign from her Zeta and ZX employment because the circumstances of her employment had become intolerable to her and she continued to experience severe mental and emotional distress, humiliation, and embarrassment due to the effects of:

A.    the abusive, male dominated work culture and environment that was hostile to Ms. Stone and other women because of their sex that was being perpetuated by Mr. Martella and other men, some of whom reported to him;

B.    Mr. Martella's discriminatory hiring of Mr. Baadsgaard for the ZX Senior Vice President Client Development position, a role she had been

excelling in since October, 2018, his refusal to allow Ms. Stone to apply, be interviewed, and considered for the position, and re-assignment of most of her duties and responsibilities without cause to Mr. Baadsgaard because of her sex;

C.     the discriminatory treatment of Ms. Stone based on her sex with respect to compensation and other terms and conditions of employment;

D.     the discriminatory change in Ms. Stone's ZX reporting relationship because of her sex;

E.     Mr. Martella's expressed hostility toward women and preferences for and favoritism of men;

F.     the discriminatory and retaliatory demotion of Ms. Stone to client development or account management roles with respect to the clients for which she previously had leadership responsibilities notwithstanding the subsequent token, superficial and empty change in her job title;

G.     Mr. Gerber's, Ms. Lang's, and other Zeta or ZX executive and human resources representatives' failures to investigate, address, and otherwise take effective remedial or corrective action in response to Ms. Stone's complaints about these unlawful acts and circumstances and their toleration and condonation of such unlawful acts and circumstances; and

H.     Ms. Lang's intimidating dismissal of Ms. Stone's complaints, cautioning that "there was nothing that warranted an investigation" and her warnings that she "could be subject to adverse behavior or consequences if the matter was pursued further" and "although retaliation is against the law, it could happen."

65.     On August 3, 2021, Ms. Stone notified Mr. Gerber that she was resigning from her Zeta employment for these reasons.

66.     Although Ms. Stone had intended that her resignation would have had a more immediate effect because she was experiencing severe mental and emotional distress at the time, Plaintiff agreed to delay the effective date of her resignation until September 30, 2021, to facilitate the transfer of her duties and responsibilities in consideration for Mr. Gerber's promises to her that Zeta would tender her regular salary to her through the September 30, 2021 termination date and she would then be eligible for, deemed to have earned, and would timely receive third quarter commission payments that were to be tendered in October, 2021, as confirmed by Zeta in writing on August 31, 2021.

67.     Mr. Martella later directed Ms. Stone to submit a written letter of resignation, which she did stating:

Per your direction, I am confirming my decision to resign from my employment with ZETA in writing. This letter constitutes notice of my decision to resign from my employment with ZETA. I feel compelled to submit it because ZETA has failed to appropriately respond to concerns I have communicated to both ZETA Leadership and Human Resources representatives about the ZETA the (sic) work culture and my employment relationship with ZETA.

I am willing to provide continuing support for my Team and Executive Leadership through September 30, 2021, to facilitate the transfer of my duties and responsibilities in an effective manner.

68.   On August 31, ,2021, a Zeta representative forwarded a proposed Separation Agreement and General Release and other documents to Ms. Stone ("severance agreement").

69.   The proposed severance agreement included an offer of various severance benefits as consideration for Ms. Stone's execution of the proposed severance agreement and release of all claims that arise out of her employment and employment relationships with Zeta, but specifically provided that Ms. Stone was to receive her third quarter commission payment, payable in the last period of October, 2021, "[e]ven if [Ms. Stone] does not sign the Agreement."

70.   Ms. Stone delayed the effective date of her resignation until and terminated her Zeta employment on September 30, 2021, because of Mr. Gerber's commitment to her and she honored her agreement to provide continuing support for her team and Executive Leadership until September 30, 2021.

71.    Ms. Stone effectuated her resignation from her ZETA employment on September 30, 2021, because the circumstances of her continued Zeta employment were intolerable to her and she continued to experience severe mental and emotional distress due to the effects of:

A.    the abusive, male dominated and abusive work culture and environment that was hostile to women because of their sex that was being perpetuated by Mr. Martella and other men, some of whom reported to him;

B.    Mr. Martella's discriminatory hiring of Mr. Baadsgaard for the ZX Senior Vice President Client Development position, a role Ms. Stone had been excelling in since October, 2018, his refusal to allow her to apply, be interviewed, and considered for the position, and re-assignment of most of her duties and responsibilities without cause to Mr. Baadsgaard;

C.    the discriminatory treatment of her based on her sex with respect to compensation and other terms and conditions of employment;

D.    the discriminatory change in her ZX reporting relationship;

E.    Mr. Martella's expressed hostility toward women and preferences for and favoritism of men;

F.    the discriminatory and retaliatory demotion of her to client development or account management roles with respect to the clients for

which Ms. Stone previously had leadership responsibilities notwithstanding the subsequent token, superficial and empty change in her job title;

G.      Mr. Gerber's, Ms. Lang's, and other Zeta or ZX executive and human resources representatives' failures to investigate, address, and otherwise take effective remedial or corrective action in response to Ms. Stone's complaints about these unlawful acts and circumstances and their toleration and condonation of such unlawful acts and circumstances; and

H.      Ms. Lang's intimidating dismissal of Ms. Stone's complaints, cautioning that "there was nothing that warranted an investigation" and her warnings that she "could be subject to adverse behavior or consequences if the matter was pursued further" and "although retaliation is against the law, it could happen."

72.      Zeta representatives post hac purported reasons for their failure to select Ms. Stone for the ZX Senior Vice President Client Development position and decisions pertaining to her compensation and other terms and conditions of her employment and their failure to investigate, respond to, and otherwise take effective remedial or corrective action in response to Ms. Stone's complaints about discrimination against her on account of sex and the hostile work environment based on sex to which she was subjected are not true and are pre-texts for discrimination against her on account of her sex.

73.     Zeta representatives post hoc purported reasons their failure to select Ms. Stone for the ZX Senior Vice President Client Development position and decisions pertaining to her compensation and other terms and conditions of her employment are not true and are pre-texts for retaliation against her for her complaints about and opposition to the discriminatory, abusive, male dominated and work culture and environment that was hostile to Ms. Stone and other women because of their sex and her objections to Zeta's business practices.

74.     Zeta representatives perpetuated their discriminatory and retaliatory treatment of Ms. Stone and violations of her rights after September 30, 2021, when they did not honor their contract to remit the third quarter commission payment to Ms. Stone in the last period of October, 2021, in retaliation for her refusal to accept the terms offered by Zeta as consideration for her execution of the proposed severance agreement.

## COUNT I
## VIOLATION OF THE EQUAL PAY ACT OF 1963

75.     Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter re-iterated paragraph by paragraph.

76.    At all times relevant, Zeta was an "employer" of and "employ[ed")
Plaintiff as these terms are defined by section 203(d) and (g) of the Fair Labor
Standards Act, 29 U.S. C. §§201, *et seq*. *See* 29 U.S.C. §203 (d) and (g).

77.    At all times relevant, Zeta was an "enterprise" as this term is
defined by section 203(r) of the Fair Labor Standards Act, 29 U.S. C. §§201, *et
seq*. *See* 29 U.S.C. §203 (r).

78.    At all times relevant, Plaintiff was an "employee" of Zeta as this
term is defined by section 203(e) of the Fair Labor Standards Act, 29 U.S. C.
§§201, *et seq*. *See* 29 U.S.C. §203 (e).

79.    At all times relevant, Messrs. Gerber and Martella and Ms. Lang
were each a "person" as this term is defined by section 203(a) of the Fair Labor
Standards Act, 29 U.S. C. §§201, *et seq*. *See* 29 U.S.C. §203 (a).

80.    The Equal Pay Act of 1963 ("EPA), 29 U.S.C. §206(d) is an
amendment to the Fair Labor Standards Act and prohibits "employer[s] ...
[from] discriminat[ing] ... on the basis of sex by paying wages to employees [...]
at a rate less than the rate [paid] to employees of the opposite sex [...] for equal
work on jobs [requiring] equal skill, effort, and responsibility, and which are
performed under similar working conditions[.]"

81.    The work performed by Plaintiff while she was employed as Vice President of Client Success for Zeta's ZX Division ("ZX") was at least equal to the work performed by Mr. Baadsgaard as the ZX Senior Vice President Client Development since it was a role she had been excelling in since October, 2018, and was at least equal to the work performed by her other male peers at ZX although her contributions to Zeta and ZX greatly exceeded theirs.

82.    Plaintiff's job as ZX's Vice President of Client Success required skill, effort, and responsibility at least equal to Mr. Baadsgaard job as the ZX Senior Vice President Client Development since it was a role she had been excelling in since October, 2018, and required skill, effort, and responsibility at least equal to the jobs of her other male peers at ZX although her contributions to Zeta and ZX greatly exceeded theirs.

83.    Plaintiff's job as ZX's Vice President of Client Success was performed under working conditions at least similar to, but actually more difficult than, those pertaining to Mr. Baadsgaard job as the ZX Senior Vice President Client Development and the jobs of her other male peers at ZX although her contributions to Zeta and ZX greatly exceeded theirs.

84.    Zeta's representatives violated Plaintiff's rights under the EPA by:

   a. Hiring Mr. Baadsgaard for the ZX Senior Vice President Client Development position, a role she had been excelling in since

October, 2018, refusing to allow her to apply, be interviewed, and/or considered for the position, and re-assigning most of her duties and responsibilities without cause to Mr. Baadsgaard to purportedly justify the higher compensation and benefits tendered to him in contrast to the lesser compensation and benefits Plaintiff had been receiving while she performed the same duties and responsibilities that became associated with Mr. Baadsgaard's ZX Senior Vice President Client Development position;

b. Failing to provide Plaintiff with compensation and benefits at least equal to what Mr. Baadsgaard received and is continuing to receive as the ZX Senior Vice President Client Development;

c. Failing to provide Plaintiff with compensation and benefits, including commissions for new business she procured from ZX clients, at least equal to what her other male peers received and are continuing to receive;

d. Failing to honor their contract to pay the third quarter commission payment to Plaintiff in the last period of October, 2021;

e. Demoting Plaintiff from her former job as ZX's Vice President of Client Success to client development or account management roles with respect to the clients for which Plaintiff previously had leadership responsibilities notwithstanding the nominal and empty change in her job title to avoid paying her compensation and granting her benefits at least equal to what Mr. Baadsgaard received and is continuing to receive as the ZX Senior Vice President Client Development and what her other male peers received and are continuing to receive; and

f. Constructively terminating Plaintiff's employment because of her sex and complaints about unequal pay and to avoid paying her compensation and granting her benefits at least equal to what Mr. Baadsgaard received and is continuing to receive as the ZX Senior Vice President Client Development and what her other male peers received and are continuing to receive.

85.    As a direct and proximate result of Zeta's intentional violation of Plaintiff's civil rights as set forth in the EPA, Plaintiff has and will continue to suffer damages, including but not limited to: the loss of employment; the loss of salary, commissions, fringe benefits, stock awards and options, and bonuses, both past and future; humiliation, mortification, embarrassment, and shock; mental, emotional and physical pain, suffering, and distress; and damage to her personal and professional reputation.

## COUNT II
## RETALIATION IN VIOLATION OF THE EQUAL PAY ACT OF 1963

86.    Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter re-iterated paragraph by paragraph.

87.    At all times relevant, Zeta was an "employer" of and "employ[ed]" Plaintiff as these terms are defined by section 203(d) and (g) of the Fair Labor Standards Act, 29 U.S. C. §§201, *et seq*. *See* 29 U.S.C. §203 (d) and (g).

88.    At all times relevant, Zeta was an "enterprise" as this term is defined by section 203(r) of the Fair Labor Standards Act, 29 U.S. C. §§201, *et seq*. *See* 29 U.S.C. §203 (r).

89.    At all times relevant, Plaintiff was an "employee" of Zeta as this term is defined by section 203(e) of the Fair Labor Standards Act, 29 U.S. C. §§201, *et seq. See* 29 U.S.C. §203 (e).

90.    At all times relevant, Messrs. Gerber and Martella and Ms. Lang were each a "person" as this term is defined by section 203(a) of the Fair Labor Standards Act, 29 U.S. C. §§201, *et seq. See* 29 U.S.C. §203 (a).

91.    The Equal Pay Act of 1963 ("EPA), 29 U.S.C. §206(d) is an amendment to the Fair Labor Standards Act and prohibits "employer[s] ... [from] discriminat[ing] ... on the basis of sex by paying wages to employees [...] at a rate less than the rate [paid] to employees of the opposite sex [...] for equal work on jobs [requiring] equal skill, effort, and responsibility, and which are performed under similar working conditions[.]"

92.    The work performed by Plaintiff while she was employed as Vice President of Client Success for Zeta's ZX Division ("ZX") was at least equal to the work performed by Mr. Baadsgaard as the ZX Senior Vice President Client Development since it was a role she had been excelling in since October, 2018, and was at least equal to the work performed by her other male peers at ZX although her contributions to Zeta and ZX greatly exceeded theirs.

93.    Plaintiff's job as ZX's Vice President of Client Success required skill, effort, and responsibility at least equal to Mr. Baadsgaard job as the ZX Senior

Vice President Client Development since it was a role she had been excelling in since October, 2018, and required skill, effort, and responsibility at least equal to the jobs of her other male peers at ZX although her contributions to Zeta and ZX greatly exceeded theirs.

94.    Plaintiff's job as ZX's Vice President of Client Success was performed under working conditions at least similar to, but actually more difficult than, those pertaining to Mr. Baadsgaard job as the ZX Senior Vice President Client Development and the jobs of her other male peers at ZX although her contributions to Zeta and ZX greatly exceeded theirs.

95.    At all times relevant herein, under the EPA Plaintiff had a right to employment with Zeta free from retaliation, discrimination or interference because she has opposed violations of the EPA and from coercion, intimidation, threats, retaliation, discrimination, and/or interference on account of having aided or encouraged any other person in the exercise of any right granted or protected by the EPA. *See* 29 U.S. C. § 215 (a) (3).

96.    Plaintiff engaged in activity protected by the EPA when she opposed Zeta's unequal and discriminatory compensation practices and complained to Messrs. Martella and Gerber and Ms. Lang about:

A.    Mr. Martella's discriminatory hiring of Mr. Baadsgaard and refusal to allow Plaintiff to apply, be interviewed, and/or considered for the position;

B.      the discriminatory re-assignment without cause of duties and responsibilities Plaintiff previously had performed to Mr. Baadsgaard to purportedly justify the higher compensation and benefits tendered to him in contrast to the lesser compensation and benefits Plaintiff had been receiving while she performed the duties and responsibilities that became associated with Mr. Baadsgaard's ZX Senior Vice President Client Development position;

C.      the discriminatory change in Plaintiff's ZX reporting relationship;

D.      the failure to provide Plaintiff with compensation and benefits at least equal to what Mr. Baadsgaard received and is continuing to receive as the ZX Senior Vice President Client Development;

E.      the failure to provide Plaintiff with compensation, including commissions for new business she procured from ZX clients, and benefits at least equal to what her other male peers received and are continuing to receive;

F.      Zeta's pattern and practice of discriminatory treatment of women based on their sex, including Plaintiff, with respect to compensation and other terms and conditions of employment and the abusive, male dominated work culture and environment that was hostile to women, including Plaintiff, because of their sex which was being perpetuated by Ms. Lang, Messrs. Martella and Gerber, and other men; and

G.     the discriminatory treatment of Ms. Stone based on her sex with

respect to compensation and other terms and conditions of employment;

H.     the discrimination on account of sex and retaliation for complaints

she made to Mr. Martella that Ms. Stone experienced on and since January 11,

2021, when Mr. Martella and Mr. Baadsgaard demoted her to client

development or account management roles with respect to the clients for

which Ms. Stone previously had leadership responsibilities; and

I.     how each of these intolerable acts and circumstances had caused

Ms. Stone to experience continuing and severe mental and emotional distress

that adversely impact her job and compelled her to complain and seek help.

97.     Zeta's representatives retaliated against Plaintiff and interfered

with her rights in violation of the EPA when:

a.  Mr. Martella threatened Plaintiff "to get on board or move on" in
    retaliation for complaints concerning Mr. Martella's discriminatory
    hiring of Mr.  Baadsgaard for and refusal to allow her to apply, be
    interviewed, and considered for the ZX Senior Vice President Client
    Development position, a role she had been excelling in since October,
    2018, and the discriminatory re-assignment without cause of duties and
    responsibilities she previously had performed to Mr. Baadsgaard to
    purportedly justify the higher compensation and benefits tendered to
    him;

b.  They created and perpetuated the abusive, male dominated and abusive
    work culture and environment that was hostile to Plaintiff so that
    Plaintiff would feel compelled to resign from her Zeta employment and

Mr. Baadsgaard, Mr. Martella's male friend and colleague, could assume all of Plaintiff's former duties and responsibilities;

c.  Failed to provide Plaintiff with compensation and benefits comparable or equivalent to what Mr. Baadsgaard received and is continuing to receive as the ZX Senior Vice President Client Development;

d.  Failed to provide Plaintiff with compensation, including commissions for new business she procured from ZX clients, and benefits comparable or equivalent to what her other male peers received and are continuing to receive;

e.  Failed to honor their contract to pay the third quarter commission payment to Plaintiff in the last period of October, 2021;

f.  Demoted Plaintiff from her former job as ZX's Vice President of Client Success to client development or account management roles with respect to the clients for which Plaintiff previously had leadership responsibilities notwithstanding the subsequent token, superficial and empty change in her job title;

g.   Treated Plaintiff differently than similarly situated male and other Zeta employees with respect to compensation and other terms and conditions of employment;

h.  Constructively terminated Plaintiff's employment;

i.  Replaced Plaintiff with Mr. Baadsgaard, Mr. Martella's male friend and colleague; and

j.  Otherwise discriminated against and disparately treating Plaintiff with respect to compensation and the terms, conditions and privileges of her employment.

98.    As a direct and proximate result of Zeta's intentional violation of

Plaintiff's civil rights as set forth in the EPA, Plaintiff has and will continue to

suffer damages, including but not limited to: the loss of employment; the loss of

salary, commissions, fringe benefits, stock awards and options, and bonuses, both past and future; humiliation, mortification, embarrassment, and shock; mental, emotional and physical pain, suffering, and distress; and damage to her personal and professional reputation.

**COUNT III**
**VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT**
**SEX DISCRIMINATION**

99.    Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter re-iterated paragraph by paragraph.

100.  At all times relevant, Zeta was an "employer" of Plaintiff as this term is defined by section 201(a) of the Michigan Elliott-Larsen Civil Rights Act, MCL §§37.2101, et seq. ("ELCRA"). *See* MCL §37.2201(a).

101.  At all times relevant, Messrs. Gerber and Martella and Ms. Lang were each a "person" as this term is defined by section 103(g) of the Michigan Elliott-Larsen Civil Rights Act, MCL §§37.2101, et seq. ("ELCRA"), *see* MCL §37.2103(g), and each was an agent of Zeta with respect to terms and conditions of and the termination of Plaintiff's former Zeta employment.

102.  At all times relevant herein, under the ELCRA, Plaintiff had a right to employment with Zeta free from discrimination against her based on her sex.

103. Zeta discriminated against Plaintiff on account of her sex in violation of Plaintiff's rights under the ELCRA by:

a. Hiring Mr. Baadsgaard for the ZX Senior Vice President Client Development position, a role she had been excelling in since October, 2018, refusing to allow her to apply, be interviewed, and considered for the position, and re-assigning most of her duties and responsibilities without cause to Mr. Baadsgaard to purportedly justify the higher compensation and benefits tendered to him in contrast to the lesser compensation and benefits Plaintiff had been receiving while she performed the same duties and responsibilities that became associated with Mr. Baadsgaard's ZX Senior Vice President Client Development position;

b. Failing to provide Plaintiff with compensation and benefits comparable or equivalent to what Mr. Baadsgaard received and is continuing to receive as the ZX Senior Vice President Client Development;

c. Failing to provide Plaintiff with compensation, including commissions for new business she procured from ZX clients, and benefits comparable or equivalent to what her other male peers received and are continuing to receive;

d. Failing to honor their contract to pay the third quarter commission payment to Plaintiff in the last period of October, 2021;

e. Demoting Plaintiff from her former job as ZX's Vice President of Client Success to client development or account management roles with respect to the clients for which Plaintiff previously had leadership responsibilities notwithstanding the subsequent  token, superficial and empty  change in her job title to avoid paying her compensation and granting her benefits comparable or equivalent to what Mr. Baadsgaard received and is continuing to receive as the ZX Senior Vice President Client Development and what her other male peers received and are continuing to receive;

f.  Treating Plaintiff differently than similarly situated male employees with respect to compensation and other terms and conditions of employment;

g.  Creating and perpetuating the abusive, male dominated work culture and environment that was hostile to Plaintiff and other women because of their sex so that Plaintiff would feel compelled to resign from her Zeta employment and Mr. Baadsgaard, Mr. Martella's male friend and colleague, could assume all of Plaintiff's former duties and responsibilities;

h.  Constructively terminating Plaintiff's employment because of her sex and to avoid paying her compensation and granting her benefits comparable or equivalent to what Mr. Baadsgaard received and is continuing to receive as the ZX Senior Vice President Client Development and what her other male peers received and are continuing to receive;

i.  Replacing Plaintiff with Mr. Baadsgaard, Mr. Martella's male friend and colleague, without cause and because of her sex; and

j.  Otherwise discriminating against and disparately treating Plaintiff on the basis of her sex with respect to compensation and other terms, conditions and privileges of her employment.

104. As a direct and proximate result of Zeta's aforementioned intentional violation of Plaintiff's civil rights as set forth by the ELCRA, Plaintiff has and will continue to suffer damages, including but not limited to: the loss of employment; the loss of salary, commissions, fringe benefits, stock awards and options, and bonuses, both past and future; humiliation, mortification, embarrassment, and shock; mental, emotional and physical pain, suffering, and distress; and damage to her personal and professional reputation.

## COUNT IV
## VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT
## RETALIATION/INTERFERENCE

105.   Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter re-iterated paragraph by paragraph.

106.   At all times relevant, Zeta was an "employer" of Plaintiff as this term is defined by section 201(a) of the Michigan Elliott-Larsen Civil Rights Act, MCL §§37.2101, et seq. ("ELCRA"). *See* MCL §37.2201(a).

107.   At all times relevant, Messrs. Gerber and Martella and Ms. Lang were each a "person" as this term is defined by section 103(g) of the Michigan Elliott-Larsen Civil Rights Act, MCL §§37.2101, et seq. ("ELCRA"), *see* MCL §37.2103(g), and each was an agent of Zeta with respect to terms and conditions of and the termination of Plaintiff's former Zeta employment.

108.   At all times relevant herein, under the ELCRA, Plaintiff had a right to employment with Zeta free from retaliation, discrimination or interference because she opposed violations of the ELCRA and from coercion, intimidation, threats, retaliation, discrimination, and/or interference on account of having aided or encouraged any other person in the exercise of any right granted or protected by the ELCRA. *See* MCL §37. 2701.

109.    Plaintiff engaged in activity protected by the ELCRA when she complained to Messrs. Martella and Gerber and Ms. Lang about:

A.      Mr. Martella's discriminatory hiring of Mr. Baadsgaard and refusal to allow Plaintiff to apply, be interviewed, and/or considered for the position;

B.      the discriminatory re-assignment without cause of duties and responsibilities Plaintiff previously had performed to Mr. Baadsgaard to purportedly justify the higher compensation and benefits tendered to him in contrast to the lesser compensation and benefits Plaintiff had been receiving while she performed the duties and responsibilities that became associated with Mr. Baadsgaard's ZX Senior Vice President Client Development position;

C.      the discriminatory change in Plaintiff's ZX reporting relationship;

D.      the failure to provide Plaintiff with compensation and benefits at least equal to what Mr. Baadsgaard received and is continuing to receive as the ZX Senior Vice President Client Development;

E.      the failure to provide Plaintiff with compensation, including commissions for new business she procured from ZX clients, and benefits at least equal to what her other male peers received and are continuing to receive;

F.      Zeta's pattern and practice of discriminatory treatment of women based on their sex, including Plaintiff, with respect to compensation and other terms and conditions of employment and the abusive, male dominated work

culture and environment that was hostile to women, including Plaintiff, because of their sex which was being perpetuated by Ms. Lang, Messrs. Martella and Gerber, and other men; and

G.     the discriminatory treatment of Ms. Stone based on her sex with respect to compensation and other terms and conditions of employment;

H.     the discrimination on account of sex and retaliation for complaints she made to Mr. Martella that Ms. Stone experienced on and since January 11, 2021, when Mr. Martella and Mr. Baadsgaard demoted her to client development or account management roles with respect to the clients for which Ms. Stone previously had leadership responsibilities;

I.     the discrimination on account of sex and retaliation for complaints Ms. Stone made to Mr. Martella that she experienced since August, 2020, when Mr. Martella convened various meetings with Mr. Baadsgaard and other men pertaining to client accounts for which Ms. Stone had responsibility without including her in the meetings and receipt of any input from her concerning the clients and their accounts and Mr. Martella routinely congratulated only men for Ms. Stone's client development achievements for which they either had no involvement or for which Ms. Stone had primary or shared responsibility;

J.     the discrimination on account of sex and retaliation for complaints she made to Mr. Martella that Ms. Stone experienced since August, 2020, when

Mr. Baadsgaard falsely accused Ms. Stone of deficient client account management on one or more occasions although she had been excluded from meetings when matters pertaining to client accounts for which Ms. Stone had responsibility ostensibly had been discussed and Mr. Baadsgaard had sought no input from her concerning the clients and any purported issues of concern pertaining to their accounts; and

K.      how each of these intolerable acts and circumstances had caused Ms. Stone to experience continuing and severe mental and emotional distress that adversely impact her job and compelled her to complain and seek help.

110.   Zeta representatives violated Plaintiff's rights under the ELCRA and engaged in retaliation and discrimination against her and interfered with her rights because she opposed a violation of the ELCRA when:

a. Mr. Martella threatened Plaintiff "to get on board or move on" in retaliation for complaints concerning Mr. Martella's discriminatory hiring of Mr. Baadsgaard for and refusal to allow her to apply, be interviewed, and considered for the ZX Senior Vice President Client Development position, a role she had been excelling in since October, 2018, and the discriminatory re-assignment without cause of duties and responsibilities she previously had performed to Mr. Baadsgaard to purportedly justify the higher compensation and benefits tendered to him;

b. They created and perpetuated the abusive, male dominated and abusive work culture and environment that was hostile to Plaintiff so that Plaintiff would feel compelled to resign from her Zeta employment and

Mr. Baadsgaard, Mr. Martella's male friend and colleague, could assume all of Plaintiff's former duties and responsibilities;

c.  Failed to provide Plaintiff with compensation and benefits comparable or equivalent to what Mr. Baadsgaard received and is continuing to receive as the ZX Senior Vice President Client Development;

d.  Failed to provide Plaintiff with compensation, including commissions for new business she procured from ZX clients, and benefits comparable or equivalent to what her other male peers received and are continuing to receive;

e.  Failed to honor their contract to pay the third quarter commission payment to Plaintiff in the last period of October, 2021;

f.  Demoted Plaintiff from her former job as ZX's Vice President of Client Success to client development or account management roles with respect to the clients for which Plaintiff previously had leadership responsibilities notwithstanding the subsequent token, superficial and empty change in her job title;

g.  Treated Plaintiff differently than similarly situated male and other Zeta employees with respect to compensation and other terms and conditions of employment;

h.  Constructively terminated Plaintiff's employment;

i.  Replaced Plaintiff with Mr. Baadsgaard, Mr. Martella's male friend and colleague; and

j.  Otherwise discriminated against and disparately treating Plaintiff with respect to compensation and the terms, conditions and privileges of her employment.

111. As a direct and proximate result of Zeta's aforementioned intentional violation of Plaintiff's civil rights as set forth by the ELCRA, Plaintiff

has and will continue to suffer damages, including but not limited to: the loss of employment; the loss of salary, commissions, fringe benefits, stock awards and options, and bonuses, both past and future; humiliation, mortification, embarrassment, and shock; mental, emotional and physical pain, suffering, and distress; and damage to her personal and professional reputation.

**V.**
**VIOLATION OF**
**MICHIGAN PUBLIC POLICY**

112.   Plaintiff re-alleges and incorporates by reference the allegations stated in the preceding paragraphs as if reiterated paragraph by paragraph in this Count.

113.   Plaintiff was demoted and most of her duties and responsibilities were assigned to Mr. Baadsgaard because she previously raised concerns and objections to Zeta leadership about the manner in which  some ZX client reports were being generated, the inaccuracy of data reported to ZX clients pertaining to Zeta's performance and number of prospective customer contacts that were attributable to Zeta's marketing efforts, a practice for which Ms. Stone's acquiescence was required and for which Ms. Stone was warned not to question, and her signing Master Service Agreements and Statements of Work on behalf of Zeta under the circumstances.

114. Plaintiff had objected to what was a pattern of Zeta's fraud and misrepresentation in violation of its contractual relationships with Zeta clients and federal and state law, which consisted of its "fixing" ZX client reports and data to ensure that these conformed with or exceeded client expectations even when the data disclosed otherwise.

115. Zeta representatives violated Michigan public policy and Plaintiff's rights because she objected to what was a pattern of Zeta's fraud and misrepresentation in violation of its contractual relationships with Zeta clients and federal and state law, which consisted of its "fixing" ZX client reports and data to ensure that these conformed with or exceeded client expectations even when the data disclosed otherwise when:

a. Mr. Martella threatened Plaintiff "to get on board or move on" in retaliation for complaints concerning Mr. Martella's discriminatory hiring of Mr. Baadsgaard for and refusal to allow her to apply, be interviewed, and/or considered for the ZX Senior Vice President Client Development position, a role she had been excelling in since October, 2018, and the discriminatory re-assignment without cause of duties and responsibilities she previously had performed to Mr. Baadsgaard to purportedly justify the higher compensation and benefits tendered to him;

b. Mr. Martella threatened Plaintiff "to get on board or move on" and reassigned most of her duties and responsibilities to Mr. Baadsgaard after he commenced employment as the ZX Senior Vice President Client Development position, a role she had been excelling in since October, 2018, because of her objections about the manner in which some ZX client reports were being generated, the accuracy of data reported to ZX

clients pertaining to Zeta's performance and number of prospective customer contacts that was attributable to Zeta's marketing efforts, and her signing Master Service Agreements and Statements of Work on behalf of Zeta under the circumstances;

c. Mr. Martella formed the "secret performance counsel" comprised of only Mr. Baadsgaard and other men and excluded Plaintiff from the "secret performance counsel" because it was responsible without Plaintiff's participation for addressing any concerns raised by ZX clients for which Plaintiff previously had been responsible about ZX's performance and "fixing" the data to be reported to ZX clients pertaining to Zeta's performance and number of prospective customer contacts that was attributable to Zeta's marketing efforts to ensure that it conformed to or exceeded customer expectations;

d. They created and perpetuated the abusive, male dominated and abusive work culture and environment that was hostile to Plaintiff so that Plaintiff would feel compelled to resign from her Zeta employment and Mr. Baadsgaard, Mr. Martella's male friend and colleague, could assume all of Plaintiff's former duties and responsibilities;

e. Failed to provide Plaintiff with compensation and benefits comparable or equivalent to what Mr. Baadsgaard received and is continuing to receive as the ZX Senior Vice President Client Development;

f. Failed to provide Plaintiff with compensation, including commissions for new business she procured from ZX clients, and benefits comparable or equivalent to what her other male peers received and are continuing to receive;

g. Failed to honor their contract to pay the third quarter commission payment to Plaintiff in the last period of October, 2021;

h. Demoted Plaintiff from her former job as ZX's Vice President of Client Success to client development or account management roles with respect to the clients for which Plaintiff previously had leadership responsibilities notwithstanding the subsequent token, superficial and empty change in her job title;

i.   Treated Plaintiff differently than similarly situated male and other Zeta employees with respect to compensation and other terms and conditions of employment;

j.   Constructively terminated Plaintiff's employment;

k.   Replaced Plaintiff with Mr. Baadsgaard, Mr. Martella's male friend and colleague; and

l.   Otherwise discriminated against and disparately treating Plaintiff with respect to compensation and the terms, conditions and privileges of her employment.

116.   As a direct and proximate result of Zeta's aforementioned intentional violation of Michigan public policy and Plaintiff's rights, Plaintiff has and will continue to suffer damages, including but not limited to: the loss of employment; the loss of salary, commissions, fringe benefits, stock awards and options, and bonuses, both past and future; humiliation, mortification, embarrassment, and shock; mental, emotional and physical pain, suffering, and distress; and damage to her personal and professional reputation.

**Count VI**
**Breach of Contract**

117.   Plaintiff re-alleges and incorporates by reference the allegations stated in the preceding paragraphs as if reiterated paragraph by paragraph in this Count.

118.   As Vice President of Client Success for Zeta's ZX Division, Plaintiff was employed by Zeta in accordance with the terms of an agreement which provided, and she otherwise legitimately expected, that she would be treated the same as male Zeta employees with respect new business she procured from Zeta clients for which she was responsible.

119.   During her tenure with Zeta, Ms. Stone continually procured new business from ZX prospects and clients for which she had been responsible and grew ZX top client total revenue and client business by more than two thousand eight hundred percent.

120.   Throughout this period of time, Zeta intentionally and deceptively paid men commissions at the rate of 5% or more of the value of the new business they procured from current and new ZX clients while Plaintiff received commissions at the rate of less than 1% of the new business she procured from current ZX clients

121.   Throughout this period of time, Zeta breached its agreement with Plaintiff by its intentional and deceptive failure to pay her commissions for new business she had procured at the rate(s) equal or comparable to what men received for business they had procured from current and new ZX clients.

122.   As a direct and proximate result of Zeta's breach of its contract to pay commissions to Plaintiff for new business she had procured at the rate(s)

equal or comparable to what men received for business they had procured from current and new ZX clients, Plaintiff has sustained damages in excess of $75,000.00; suffered humiliation, mortification, embarrassment, and shock; mental, emotional and physical pain, suffering, and distress; and sustained damage to her personal and professional reputation.

## Count VII
### Breach of Contract
### Post Notice of Resignation Commissions

123.  Plaintiff re-alleges and incorporates by reference the allegations stated in the preceding paragraphs as if reiterated paragraph by paragraph in this Count.

124.  Mr. Gerber's entered into a contract with Plaintiff on or after August 3, 2021, by which he agreed on behalf of Zeta that Plaintiff would be eligible for, deemed to have earned, and would timely receive third quarter commission payments that were disbursed to other Zeta employees in October, 2021, if she agreed to provide continuing support for her team and Executive Leadership and to delay the effective date of her resignation until September 30, 2021.

125.  Although she was experiencing severe mental and emotional distress at the time, Plaintiff agreed to delay the effective date of her resignation and provided continuing support for her team and Executive

Leadership until September 30, 2021, inconsideration for the promises Mr. Gerber made to her.

126.  Zeta beached this contract with Plaintiff by its failure to pay the commissions that were due to Plaintiff in October, 2021.

127.  As a direct and proximate result of Zeta's breach of this contract to pay third quarter commissions to Plaintiff, Plaintiff has sustained damages in excess of $75,000.00; suffered humiliation, mortification, embarrassment, and shock; mental, emotional and physical pain, suffering, and distress; and sustained damage to her personal and professional reputation.

**Count VIII**
**Promissory Estoppel**
**Post Notice of Resignation Commissions**

128.  Plaintiff re-alleges and incorporates by reference the allegations stated in the preceding paragraphs as if reiterated paragraph by paragraph in this Count.

129.  Mr. Gerber's made an explicit, definite, and enforceable promise to Plaintiff on or after August 3, 2021, by which he agreed on behalf of Zeta that Plaintiff would be eligible for, deemed to have earned, and would timely receive third quarter commission payments that were disbursed to other Zeta employees in October, 2021, if she agreed to provide continuing support for

her team and Executive Leadership and to delay the effective date of her resignation until September 30, 2021.

130.   Mr. Gerber reasonably expected that his promise to Plaintiff would induce her to delay the effective date of her resignation and provide continuing support for her team and Executive Leadership until September 30, 2021.

131.   Although she was experiencing severe mental and emotional distress at the time, Plaintiff delayed the effective date of her resignation and provided continuing support for her team and Executive Leadership until September 30, 2021, in reliance on Mr. Gerber's promise to her.

132.   Zeta has beached Mr. Gerber's promise to Plaintiff by its failure to pay the commissions that were due to Plaintiff in October, 2021.

133.   Mr. Gerber's promise to Plaintiff should be enforced to avoid injustice to Plaintiff.

134.   As a direct and proximate result of Zeta's breach of promises to pay third quarter commissions to Plaintiff, Plaintiff has sustained damages in excess of $ 75,000.00; suffered humiliation, mortification, embarrassment, and shock; mental, emotional and physical pain, suffering, and distress; and sustained damage to her personal and professional reputation.

### IX.
### UNJUST ENRICHMENT

135.   Plaintiff re-alleges and incorporates by reference the allegations stated in the preceding paragraphs as if reiterated paragraph by paragraph in this Count.

136.   During her tenure with Zeta, Ms. Stone continually procured new business from ZX prospects and clients for which she had been responsible and grew ZX total revenue and client business by more than two thousand eight hundred percent.

137.   Throughout this period of time, Zeta intentionally and deceptively paid men commissions at the rate of 5% of the value of the new business they procured from current and new ZX clients while Plaintiff received commissions at the rate of less than 1% of the new business she procured from current ZX clients.

138.   Throughout this period of time, Zeta received the benefit of Plaintiff's procurement of new business for Zeta, but intentionally and deceptively failed and refused to pay Plaintiff for the fair and reasonable value of her new business procurement.

139.   Zeta has been unjustly enriched at Plaintiff's expense by its intentional and deceptive failure and refusal to pay Plaintiff for the fair and reasonable value of her new business procurement.

140.   As a direct and proximate result of Zeta's breach of its duties to pay commissions to Plaintiff for new business she had procured, Defendant has been unjustly enriched by the amount of and Plaintiff has sustained damages in excess of $75,000.00; suffered humiliation, mortification, embarrassment, and shock; mental, emotional and physical pain, suffering, and distress; and sustained damage to her personal and professional reputation.

**X.**
**FRAUD AND MISREPRESENTATION AND SILENT FRAUD**

141.   Plaintiff re-alleges and incorporates by reference the allegations stated in the preceding paragraphs as if reiterated paragraph by paragraph in this Count.

142.   During her tenure with Zeta, Ms. Stone Zeta's executive and human resources representatives made promises and representations of material fact orally and in writing that she would receive commissions and bonuses at rates equal or comparable to what men received for business they had procured from current and new ZX clients.

143.   Throughout this period of time, Zeta intentionally and deceptively did not disclose to Plaintiff that it paid men commissions at the rate of 5% or more of the value of the new business they procured from current and new ZX

clients while Plaintiff received commissions at the rate of less than 1% of the new business she procured from current and new ZX clients.

144.   Zeta's promises and representations of material fact to Plaintiff that she would receive commissions and bonuses at rates equal or comparable to what men received for business they had procured from current and new ZX clients were false when these were made.

145.   Zeta's intentionally and deceptively failed to disclose to Plaintiff that it paid men commissions at the rate of 5% or more of the value of the new business they procured from current and new ZX clients while Plaintiff received commissions at the rate of less than 1% of the new business she procured from current and new ZX clients and Zeta's to cover up the falsity of Zeta's promises and representations of material fact to Plaintiff.

146.   Zeta's executive and human resources representatives knew that their promises and representations of material fact to Plaintiff were false when these were made or they made them recklessly, without knowing whether these were true.

147.   Zeta's executive and human resources representatives had no intention of abiding by these promises and representations of material facts to Plaintiff.

148.  Zeta's executive and human resources representatives intended that Plaintiff rely on these promises and representations of material facts to Plaintiff.

149.   During her tenure with Zeta, Plaintiff continually procured new business from ZX prospects and clients for which she had been responsible and grew ZX top client total revenue and client business by more than two thousand eight hundred percent in good faith and in reliance on these promises and representations of material facts made by Zeta's executive and human resources representatives to Plaintiff to induce her to continually procure business from current and new ZX clients.

150.   Throughout this period of time, Zeta deceptively paid men commissions at the rate of 5% or more of the value of the new business they procured from current and new ZX clients while Plaintiff received commissions at the rate of less 1% of the new business she procured from current and new ZX clients.

151.  Throughout this period of time, Zeta and/or its executive and other representatives deceptively enriched themselves at Plaintiff's expense by distributing amounts that Plaintiff otherwise earned and should have received as commissions to each other.

152.   As a direct and proximate result of Zeta's acts of fraud, fraudulent misrepresentation, and silent fraud, Plaintiff has sustained damages in excess of $75,000.00; suffered humiliation, mortification, embarrassment, and shock; mental, emotional and physical pain, suffering, and distress; and sustained damage to her personal and professional reputation.

## XI.
## CONVERSION

153   Plaintiff re-alleges and incorporates by reference the allegations stated in the preceding paragraphs as if reiterated paragraph by paragraph in this Count.

154.   During her tenure with Zeta, Ms. Stone continually procured new business from ZX prospects and clients for which she had been responsible and grew ZX total revenue and client business by more than two thousand eight hundred percent.

155.   Throughout this period of time, Zeta deceptively paid men commissions at the rate of 5% or more of the value of the new business they procured from current and new ZX clients while Plaintiff received commissions at the rate of less than 1 % of the new business she procured from current and new ZX clients.

156.    Throughout this period of time, Zeta and/or its executive and other representatives converted the amount of commissions that should have been paid to Plaintiff to their own use in violation of Michigan common law and MCLA 600.2919a.

157.    Pursuant to MCLA 600.2919a, Plaintiff is entitled to three times the actual damages she has sustained due to the past and continuing acts of conversion by Zeta and/or its executive and other representatives.

158.    As a direct and proximate result of Zeta's acts of conversion, Plaintiff has sustained damages in excess of $75,000.00; suffered humiliation, mortification, embarrassment, and shock; mental, emotional and physical pain, suffering, and distress; and sustained damage to her personal and professional reputation.

**WHEREFORE,** Plaintiff requests that this Court enter an Order and Judgment against Defendant awarding to Plaintiff:

a.    Compensatory damages in an amount in excess of $75,000.00 to which she is found to be entitled, inclusive of back and front pay, commissions, bonus, stock awards and options, and other compensation lost by Plaintiff due to discrimination and retaliation against her and other violations of her statutory, common law and contractual rights, and reimbursement for costs incurred by Plaintiff to replace lost benefits;

b.      Liquidated damages for its violations of the Equal Pay Act of 1963;

c.      Treble damages for violation of MCLA 600.2919a;

d.      Compensatory damages for mental anguish, emotional distress, humiliation and injury to her reputation;

e.      Punitive and/or exemplary damages;

f.      Reasonable attorney fees and costs, including expert witness fees, and pre and post judgment interest;

g.      Injunctive or equitable relief to foreclose further violations of the ELCRA, EPA; and Michigan public policy; and

h.      Such other legal or equitable relief as this Court deems appropriate.

Respectfully submitted,

**GASIOREK, MORGAN, GRECO, McCAULEY & KOTZIAN, P.C.**

_/s/ Raymond J. Carey_
**Raymond J. Carey (P33266)**
Attorneys for Plaintiff
30500 Northwestern Hwy., Ste. 425
Farmington Hills, MI  48334
(248) 865-0001
rcarey@gmgmklaw.com

Date:  November 23, 2021

## DEMAND FOR TRIAL BY JURY

Plaintiff Shannon Stone, by her attorneys, GASIOREK, MORGAN, GRECO,

MCCAULEY & KOTZIAN P.C., demands a trial by Jury.

Respectfully submitted,

**GASIOREK, MORGAN, GRECO,
MCCAULEY & KOTZIAN, P.C.**

BY:   */s/ Raymond J. Carey*
Raymond J. Carey (P33266)
Attorney for Plaintiff
30500 Northwestern Hwy, Ste. 425
Date:  November 23, 2021    Farmington Hills, MI 48334
(248) 865-0001
rcarey@gmgmklaw.com