## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**SHANNON STONE,**

       **Plaintiff,**

**v.**

**ZETA GLOBAL CORP.,**

       **Defendant.**

_____/

**Case No. 21-12736**

**Hon. Denise Page Hood**

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL DISMISSAL (ECF No. 22), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO COMPEL (ECF No. 25) and GRANTING DEFENDANT'S MOTION FOR PROTECTIVE ORDER (ECF No. 29)

## I.    BACKGROUND

This matter is before the Court on Defendant Zeta Global Corp.'s Motion for Partial Dismissal of Plaintiff Shannon Stone's Amended Complaint pursuant to Rule 12(b)(6) of the Rules of Civil Procedure of the following: Count IV (Violation of the Elliott-Larsen Civil Rights Act for Retaliation/Interference; Count V (Violation of Michigan Public Policy); Count VI (Breach of Contract); Count X (Fraud, Misrepresentation and Silent Fraud); and Count XIII (Violation of Title VII for

Retaliation/Interference with Rights. (ECF No. 22) A response and reply have been filed and a hearing held on the matter. (ECF Nos. 26, 30, 39)

On November 23, 2021, Stone filed a Complaint against Zeta alleging eleven counts, which was amended on May 27, 2022 alleging thirteen counts: Violation of the Equal Pay Act of 1963 (Count I); Retaliation in Violation of the Equal Pay Act of 1963 (Count II); Violation of the Elliott-Larsen Civil Rights Act Sex Discrimination (Count III); Violation of the Elliott-Larsen Civil Rights Act Retaliation/Interference (Count IV); Violation of Michigan Public Policy (Count V);  Breach of Contract (Count VI); Breach of Contract Post Notice of Resignation Commissions (Count VII); Promissory Estoppel Post Notice of Resignation Commissions (Count VIII); Unjust Enrichment (Count IX); Fraud and Misrepresentation and Silent Fraud (Count X); Conversion (Count XI); Violation of Title VII Sex Discrimination (Count XII); and, Violation of Title VII Retaliation/Interference with Rights (Count XIII). (Amended Complaint, ECF No. 20)

Stone commenced employment with Zeta on April 30, 2015 and was its Vice President of Client Success for its ZX Division until January 11, 2021, when she was demoted to a client development or account management, a role she held until September 30, 2021, when her employment was terminated. (ECF No. 20, PageID.247) As Vice President, Stone was employed in accordance with the terms

2

of an agreement, and expected, that she would be treated the same as male Zeta employees with respect to compensation, commissions, bonus or other incentive compensation for business procured from new and current clients. *(Id.* at PageID.248)

Stone reported to the President of ZX, managed the entire ZX client portfolio; was the primary client development and company operations lead; partnered with respect to business development, growth plans for all client accounts, revenue objectives for all client accounts, client strategy and new solutions for prospective sale to clients, coordination with Zeta's business development team to manage client related transitions, revenue forecasting in collaboration with Zeta's finance team, strategic planning with Zeta's senior leadership team, coordination with business units outside of the ZX sales team, and process and team development; managed ZX's U.S. based client success and India based operations teams; and effectively developed, supported, and supervised ZX client development representatives. (*Id.* at PageID.248) Stone continually procured new business from ZX prospects and clients for which she had been responsible and grew ZX top client revenue and business from a two million three hundred ninety-five thousand dollars to a sixty-nine million, five hundred-thousand-dollar annual run rate, an increase of two thousand eight hundred and one percent. (*Id*. at PageID.248-.49)

Stone procured one of the largest client contracts in Zeta history; she was the

recipient of Zeta's Excellence Award in 2019 and 2020 and received other recognition of her success as Vice President of Client Success for ZX; developed ZX's operational process that integrated and led all departments and disciplines by which all clients and accounts followed; and led a cross-functional team that reinvented how Zeta created value for its customers.   Stone asserts that despite being continuously and intentionally denied the necessary resources that were needed to manage a seventy-million-dollar enterprise Stone was instrumental in building, growing, and maintaining ZX.  She claims that she persevered with meager resources, with virtually no support, and a tiny team, which is why some in Zeta referred to her as the "unicorn."  (*Id*. at PageId.249)

Matt Martella became President of ZX in January 2020.  In July or August, 2020, after Stone learned that Martella had hired Jason Baadsgaard as the ZX Senior Vice President Client Development, she complained to Martella about his discriminatory hiring of Baadsgaard and refusal to allow her to apply, be interviewed, and/or be considered for the position.  (*Id*. at PageID.250) Stone claims Martella retaliated against her because of her complaints, reassigning many of her duties and responsibilities without cause to Baadsgaard.  (*Id*. at PageID.252)

On November 2, 2020, Stone complained directly to Steven Gerber, Zeta's President and Chief Operating Officer, about Zeta's pattern and practice of

4

discriminatory treatment of women, including Martella's hiring of Baadsgaard and the reassignment of her duties and responsibilities to Baadsgaard. (*Id*. at PageID.257) Gerber did not investigate Stone's complaints. Instead, Gerber told Stone that he allowed Martella to hire his friend, Baadsgaard, because he "couldn't allow another ZX president to fail" and that Baadsgaard was only hired on a temporary basis. (*Id*. at PageID.259)

Stone was demoted to a client development representative role by Martella and Baadsgaard on January 11, 2021. An organization chart was issued on February 1, 2021 depicting Stone's relegated role and each ZX client development team member's role. (*Id*. at PageID.260) Stone again complained directly to Gerber on February 9, 2021, who referred Stone to Denise Lang, Senior Vice President and Assistant General Counsel for Zeta. Stone conferred with Lang on February 11, 2021 regarding her complaints. (*Id*. at PageID.261, .264) Lang did not investigate Stone's complaints, but instead gave Stone three options: whether no further action should be taken concerning her complaints; whether investigation of the complaints should be commenced with possible retaliatory repercussions; or whether human resources should facilitate and attend meetings between Martella and Stone about her complaints with possible retaliatory repercussions. (*Id.* at PageID.266) Lang dismissed Stone's complaints, cautioning her that "there was nothing that warranted an investigation,"

warning Stone that she "could be subject to adverse behavior or consequences if the matter was pursued further," and acknowledging that "although retaliation is against the law, it could happen." (*Id.* at PageID.266) Stone informed Lang on February 16, 2021 that Stone was not going to file a complaint with human resources because of Lang's dismissive response and for fear of potential retaliation as described by Lang. (*Id*. at PageID.267)

On March 18, 2021, Stone told Gerber she could no longer continue to operate under her current circumstances and asked to be elevated to the senior vice president position. Stone was notified on March 24, 2021 that her request was denied, and instead was given an undefined group vice president position effective April 1, 2021, which was a hollow and superficial title. (*Id*. at PageID.261-.62) Stone felt compelled to resign because of the circumstances of her employment which had become intolerable. Stone resigned on August 3, 2021, with an effective date of September 30, 2021. (*Id*. at PageID.269, .271) She agreed to delay the effective date until September 30, 2021, to facilitate the transfer of her duties and responsibilities, in consideration of Gerber's promises that Zeta would tender her regular salary through September 30, 2021. At that time, Stone would then be eligible to receive third quarter commission payments that were to be tendered in October, 2021, as confirmed by Zeta in writing on August 31, 2021. (*Id*. at PageID.271) Martella directed Stone

to submit a written letter of resignation, which she did.  (*Id*. at PageID.272)  Stone effectuated her resignation from Zeta on September 30, 2021 because the circumstance of her continued employment were intolerable and she continued to experience severe mental and emotional distress.  (*Id.* at PageID.273) Stone thereafter filed the instant action.

## II.    ANALYSIS

### A.    Motion to Dismiss Standard of Review

Rule 12(b)(6) of the Rules of Civil Procedure provides for a motion to dismiss based on failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]  Although not outright overruling the "notice pleading" requirement under Rule 8(a)(2) entirely, *Twombly* concluded that the "no set of facts" standard "is best forgotten as an incomplete negative gloss on an accepted pleading standard." *Id.* at 563.  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged. *Id.* at 556.  Such allegations are not to be discounted because they are "unrealistic or nonsensical," but rather because they do nothing more than state a legal conclusion–even if that conclusion is cast in the form of a factual allegation. *Ashcroft v. Iqbal,* 556 U.S. 662, 681  (2009).  To survive a motion to dismiss, the non-conclusory "factual content" and the reasonable inferences from that content, must be "plausibly suggestive" of a claim entitling a plaintiff to relief. *Id.*  Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not shown, that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  The court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001).

The arguments are addressed below, in the order presented by the movant, Zeta.

**B.    Count VI, Breach of Contract Claim**

Zeta moves to dismiss Stone's Breach of Contract Claim asserting that the count is bereft of the cause of action's most fundamental element: the existence of a valid and enforceable contract.  Zeta asserts that Stone fails to identify the contract's terms and fails to allege that Zeta breached the "agreement."  Zeta further asserts that

Stone's breach of contract claim is a failed gender discrimination claim under Title VII, which must be filed with the Equal Employment Opportunity Commission ("EEOC"), which she has not done.

Stone responds that contrary to Zeta's assertions, Stone has pleaded each of the elements for breach of an employment contract under Michigan law, including the terms of the contract that were breached by Zeta.  Stone's breach of contract claim alleges that she was employed by Zeta "in accordance with the terms of an agreement which provided, and she otherwise legitimately expected, that she would be treated the same as male employees of Defendant with respect to ... commissions, bonus or other incentive compensation for business procured from new and current clients of Defendant." Zeta breached its agreement by failing to pay Stone commissions for new business she had procured at the rate equal or comparable to what men received. Stone alleges that Zeta paid men commissions at the rate of 5% or more, whereas Stone received a rate of less than 1%.  (ECF No. 20, PageID.296-97) Stone, in a footnote 9 on her response, cites "Defendant obviously knows that Plaintiff's claims for breach of contract in Count VI also are premised on each annual Zeta Global Incentive Plan issued by Zeta's Director, Benefits, Compensation & Payroll to Plaintiff, which applied to all of its eligible employees, see Ex. A; and each annual Zeta Global Incentive Plan Individual Participant Letter issued by Zeta's Director,

Benefits, Compensation & Payroll to Plaintiff, id."  (ECF No. 26 , PageID.632, n. 9)

However, a review of Stone's Amended Complaint does not mention specifically

Zeta's compensation plan.  Stone refers to the following pages of the Amended

Complaint to support her breach of contract claim: ECF No. 20, PageID.244-313, ¶¶

13-32, 117-122.  (ECF No. 26, PageID.632)

In a Michigan breach of contract claim, a plaintiff must establish the following:

(1) a valid contract exists between the parties; (2) the terms of contract require the

performance of certain actions; (3) a party violated the terms of the contract; and (4)

the breach caused an injury to the aggrieved party.  *Shaugnessy v. Interpublic Grp. Of*

*Cos., Inc.,* 506 F. App'x 369, 374 (6th Cir. Nov. 21, 2012) (citing, *Webster v. Edward*

*D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir.1999)).

Stone asserts in her Amended Complaint that there was an "agreement" with

Zeta with respect to "commissions, bonus or other incentive compensation for

business procured from new and current clients," but the terms of the incentives and

how incentives are to be earned are not alleged in the Amended Complaint.  As noted

above, although Stone's response argues that Zeta should "obviously" know that

Stone was referring to Zeta's incentive plans, the Amended Complaint does not refer

to the plan at all.  There is no reference as to what Zeta's incentive plans entails–what

either Stone or Zeta are required to do under the plans.  It appears that Stone is now

10

referring to the breach of contract claim as an "implied" contract, but the elements of both an implied or express contract are the same as that of an express contract. *Lowery v. Dep't of Corrections*, 146 Mich. App. 342, 380 (1985).  Stone's Breach of Contract claim in Count VI fails to state a claim upon which relief may be granted since it is devoid of what the terms of the agreement is regarding commission and the terms which require the performance of certain actions by either Stone or Zeta.  Count VI of the Amended Complaint, the Breach of Contract claim, is dismissed.

### C.    Count X, Fraud, Misrepresentation and Silent Fraud

Zeta argues that Stone's allegations of fraud, misrepresentation and silent fraud, are threadbare and conclusory.  Zeta claims that although Stone predicates her fraud and misrepresentation claims on Zeta's failure to pay her commissions comparable to her male counterparts, Stone is unable to satisfy the heightened pleading standard in Rule 9 of the Rules of Civil Procedure.

Stone responds that contrary to Zeta's assertions, review of the allegations which pertain to Count X of Plaintiff's Amended Complaint discloses that Plaintiff has pleaded each of the elements of a claim for fraud, misrepresentation, and silent fraud consistent with the heightened pleading standard imposed by Fed. R. Civ. P. 9(b).  Stone cites to the Amended Complaint, ECF No. 20, PageID.244-313, ¶¶ 13-32, 117-122, 141-152.   (ECF No. 26, PageID.639)    Stone claims that Zeta's

representatives made material representations pertaining to Stone's commission eligibility and how she would be treated under Defendant's commission plan, i.e., the annual Zeta Global Incentive Plan; (b) that these were false; (c) that when Zeta's representatives made the representations they knew these were false, or made them recklessly, without any knowledge of the truth and as a positive assertion; (d) that Zeta's representatives made the false representations with the intention that Stone would act on these; (e) that Stone acted in reliance on the false representations each time she diligently procured additional business; and (f) she sustained damages as a result, i.e., loss of commissions in the appropriate amount to which she was entitled.

The Sixth Circuit has interpreted Rule 9(b) as requiring a plaintiff to allege the time, place, and content of the alleged misrepresentation on which they relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud. *See, Yuhasz v. Brush Welman, Inc.,* 341 F.3d 559, 563 (6th Cir. 2003).

Claims for fraud and misrepresentation in Michigan common law are:

> (1) that defendant made a material representation; (2) that it was false; (3) that when he made it he knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to recovery.

*Hi Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 336 (1976). "Silent fraud" is actionable when the defendant owed a legal or equitable duty under the circumstances to disclose information and suppressed that information. *Hord v. Environmental Research Institute of Michigan*, 463 Mich. 399, 412 (2000). "The gist of the [silent fraud] action is fraudulently producing a false impression on the mind of the other party." *M & D, Inc. v. W. B. McConkey*, 231 Mich. App. 22, 31 (1998).

After a review of Stone's Amended Complaint asserting fraud, the Court finds that it fails to state with particularity the fraud allegations as required by Rule 9(b). The Amended Complaint states, without specifics, that "during her tenure" Zeta's executive and human resources representatives "made promises and representations of material fact orally and in writing that she would receive commissions and bonuses at rates equal or comparable to what men received for business they had procured from current and new ZX clients." She further states that "throughout this period of time," Zeta intentionally and deceptively did not disclose to Plaintiff that it paid men commissions at the rate of 5% or more of the value of the new business they procured from current and new clients while Stone received commissions at the rate of less than 1%. (ECF No. 20, PageID.299-.301)

Stone failed to allege fraud or misrepresentation fraud claims with sufficient particularity as required by Rule 9(b). Stone does not identify the specific

representatives who promised her that she would receive the same rate as the men or anyone else in the company.  Stone does not identify the specific time which these representations were made.  Stone does not identify the specific instance when the men received 5% commission rate, compared to the specific instance when she only received a 1% commission rate.  Stone's allegations are generalized and do not specifically identify the instances when she was promised to be paid the same rate as everyone in the company.  Stone's response again cites the Zeta incentive plans, but as noted previously, the Zeta incentive plans were not identified in her Amended Complaint.

As to Stone's silent fraud claim, she has not stated the "duty" Zeta owed to her under the circumstances to disclose information which was suppressed.  Stone's allegations in Count X of the Amended Complaint– the fraud, misrepresentation and silent fraud claims–is dismissed for failure to state a claim upon which relief may be granted under Rules 12(b)(6) and 9(b) of the Rules of Civil Procedure.

### D.    Count V, Violation of Michigan Public Policy

Zeta moves to dismiss Count V, Violation of Michigan Public Policy claiming that this count also sounds in fraud and falls short of stating an actionable claim.  Zeta asserts that for the same reasons as its argument on the fraud count, Count V must be dismissed for failing to meet the requirements under Rule 9(b).  Zeta also argues that

Stone's claim under Count V alleges only injuries to Stone, rather than harm imposed upon the "public" generally.  Stone fails to identify a Michigan "public policy" that is relevant to her claim according to Zeta.

Stone responds that Michigan's public policy is that an employer may not terminate the employment of an "at will" employee when the reason contravenes Michigan public policy as set forth in *Suchodolski v. Mich. Consol. Gas Co.*, 412 Mich. 692 (1982).  Stone further responds that her employment-related cause of action is not subject to the heightened pleading standard under Rule 9(b).

Under Michigan law, contracts for permanent employment or for an indefinite period of time are presumptively construed to be at-will agreements. *Rowe v. Montgomery Ward & Co., Inc.*, 437 Mich. 627, 473 N.W.2d 268, 271 (1991). As argued by Stone in her response, she is an at-will employee. In *Suchodolski*, the Michigan Supreme Court described three situations when Michigan courts have found that termination of an at-will employee violated public policy. *Id.* at 711–12. A termination violates public policy when:

> (1) the employee is discharged in violation of an explicit legislative statement prohibiting discharge of employees who act in accordance with a statutory right or duty; (2) the employee is discharged for the failure or refusal to violate the law in the course of employment; or (3) the employee is discharged for exercising a right conferred by a well-established legislative enactment.

*McNeil v. Charlevoix Cnty.*, 484 Mich. 69, 772 N.W.2d 18, 24 (2009); *Hoven v.*

15

*Walgreen Co.*, 751 F.3d 778, 783–84 (6th Cir. 2014)

Stone's Amended Complaint does not identify "an explicit legislative statement prohibiting discharge of employees who act in accordance with a statutory right or duty."  Stone also fails to allege that she refused "to violate the law in the course of employment" and did not identify "the law" she did not want to violate.  Stone did not identify "a right conferred by a well-established legislative enactment."  Stone instead argues "she experienced the adverse actions articulated in Count V, which included, but were not limited to, a demotion, reassignment of most of her duties and responsibilities to Mr. Baadsgaard, and her constructive discharge from her former employment with Defendant, and that she sustained damages as a consequence because of her failure or refusal to violate the law in the course of her former employment with Defendant." (ECF No. 26, PageID.628) Stone failed to identify any policy which Michigan recognizes in the *Suchodolski* case cited in her response. Count V of the Amended Complaint, the Violation of Michigan Public Policy claim is dismissed.

### E.    ELCRA and Title VII Retaliation Claim (Counts IV and XIII)

Zeta seeks dismissal of Stone's ELCRA and Title VII Retaliation Claims in Counts IV and XIII of the Amended Complaint claiming that Stone's skeletal claims of opposition to Zeta's discriminatory practices are insufficient to state a retaliation

claims.  Zeta argues that Stone's claims under these two Counts are merely vague charges of discrimination and she has failed to establish a protected activity.  Zeta asserts that Stone's complaint that the hiring of Baadsgaard was discriminatory is insufficient to qualify as a protected activity.  Stone's allegations that she reported discriminatory practices to Gerber and Lang are also threadbare and do not sufficiently plead protected activity according to Zeta.  Also, Stone's allegations that she complained about inaccurate ZX client reports is insufficient to identify protected activity.

Stone responds that the opposition clause protects not only the filing of formal discrimination charges with the EEOC, but also complaints to management and less formal protests of discriminatory employment practices.  Stone asserts that she has pleaded the elements of a retaliation claim in her Amended Complaint: ECF NO. 20, PageID.244-313,  ¶¶  333-34,  41-42,  48-63,  105-111,  168-171.   (ECF No. 26, PageID.643) Stone claims that she has alleged the protected activity when she complained to Gerber, Martella and Lang about the discrimination she, as well as other women, experienced as employees of Zeta.

The  elements  of  a  *prima facie*  case  of  under  Title  VII  and  the  ELCRA retaliation claims are the same: 1) that plaintiff engaged in an activity protected by Title VII or ELCRA; 2) that the defendant knew of this exercise of plaintiff's

17

protected rights; 3) that defendant consequently took an employment action adverse to plaintiff; and 4) that there is a causal connection between the protected activity and the adverse employment action. *Balmer v. HCA, Inc.,* 423 F.3d 606, 613-14 (6th Cir. 2005); *Abbott v. Crown Motor Co., Inc.,* 348 F.3d 537, 542 (6th Cir. 2003).  Once a *prima facie* retaliation claim is established, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action.  *Spengler v. Worthington Cylinders,* 615 F.3d 481, 492 (6th Cir. 2010).  The burden then shifts back to the plaintiff to show the stated reasons were mere pretext to mask retaliation. *Id.*

Protected activities include:  opposition to any unlawful employment practice, or, making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding or hearing in connection with an unlawful employment practice.  42 U.S.C. § 2000e-3(a).  Causation can be proven indirectly through circumstantial evidence such as suspicious timing.  *Mickey v. Zeidler Tool & Die Co.,* 516 F.3d 516, 523, 525 (6th Cir. 2008).  Temporal proximity between an assertion of Title VII rights and a materially adverse action, is sufficient to establish the causal connection element of a retaliation claim where an adverse employment action occurs very close in time after an employer learns of a protected activity.  *Id*. at 525.

The opposition clause of Title VII makes it "unlawful ... for an employer to

discriminate against any of his employees ... because he has opposed any practice made ... unlawful ... by this [title.]" 42 U.S.C. § 2000e-3(a). The Supreme Court has held that the term "oppose" should be interpreted based on its ordinary meaning: "[t]o resist or antagonize ... ; to contend against; to confront; resist; withstand." *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009) (alteration and omission in original) (quoting Webster's New International Dictionary 1710 (2d ed. 1957)). Examples of opposition activity protected under Title VII include "complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; [and] refusing to obey an order because the worker thinks it is unlawful under Title VII." *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 721 (6th Cir. 2008) (quoting *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000)); *see also Crawford*, 555 U.S. at 276 ("When an employee communicates to her employer a belief that the employer has engaged in ... a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." The Sixth Circuit and the Supreme Court have imposed limited restrictions on what activity constitutes opposition activity. While the plaintiff's allegations of protected activity do not need to "be lodged with absolute formality, clarity, or precision," the plaintiff must allege more than a "vague charge of discrimination." *Yazdian v. ConMed Endoscopic Techs., Inc*., 793 F.3d 634, 645

(6th Cir. 2015) (first quoting *Stevens v. Saint Elizabeth Med. Ctr., Inc.*, 533 F. App'x 624, 631 (6th Cir. 2013); then quoting *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1313 (6th Cir. 1989)); *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 344–45 (6th Cir. 2021).

Reviewing the Amended Complaint, the Court finds that Stone complained to Martella about his discriminatory hiring of Baadsgaard, refusing her from applying and/or be considered for the position.  (ECF No. 20, PageID.254) Stone also complained to Gerber about Zeta's pattern and practice of discriminatory treatment of women based on their sex, with respect to compensation and other terms and conditions of employment, and the abusive, male dominated work culture and environment that was hostile to women.  (ECF No. 20, PageID.257) Stone further complained to Gerber about Martella's discriminatory hiring of Baadsgaard, a position in which she was excelling at, but Martella did not allow her to apply.  She also told Gerber about Zeta's discriminatory treatment of Stone based on her sex with respect to compensation and other terms and conditions of employment.  *Id.*  Stone also alleged she reiterated to Lang her complaints as to Zeta's pattern and practice of discriminatory treatment of women based on their sex, with respect to compensation and other terms and conditions of employment and the abusive, male dominated work culture and environment that was hostile to women.  *Id.* at PageID.264.

Based on these allegations in the Amended Complaint, the Court finds Stone has stated protected activities under the opposition clause of Title VII (and ELCRA). The allegations are more than bare allegations of discrimination against women at Zeta. The Motion to Dismiss the retaliation claims in Counts IV (ELCRA) and XIII (Title VII) of the Amended Complaint is denied.

## III.    MOTION TO COMPEL BY PLAINTIFF (ECF No. 25)

Stone seeks an order compelling Zeta to provide complete answers to Plaintiff's Interrogatories Nos. 2-6, compelling Zeta to produce all documents and electronically stored information that are response to Plaintiff's Request for Production of Documents Nos. 4-5, 7, 12-23, 26-38, 40-58, 60-61, 64-66, 68-69, 73-75, 77-78, 82-97, 102-114, 120-124, 129-132. Stone seeks award of attorney fees and costs incurred in filing this motion.

Zeta responds that Stone's discovery requests seek information and documents, without any limitation, from and communications related to all current and former Zeta employees and/or representatives, "any other Zeta executive, human resources or other representative." Zeta asserts that Stone is not entitled to boundless discovery based on a pattern and practice discrimination claim by Zeta because this is not a pattern and practice lawsuit. The allegations in the Amended Complaint are that Stone's pattern and practice claims relate solely to how Stone was treated, not other

employees.  Zeta asserts it detailed its objections to each discovery requests and

supplement its written responses with further correspondences particularizing its

objections and responses.

Rule 26(b) of the Rules of Civil Procedure provides:

(b) Discovery Scope and Limits.
(1) Scope in General. Unless otherwise limited by court order, the scope
of discovery is as follows: Parties may obtain discovery regarding any
nonprivileged matter that is relevant to any party's claim or defense and
proportional to the needs of the case, considering the importance of the
issues at stake in the action, the amount in controversy, the parties'
relative access to relevant information, the parties' resources, the
importance of the discovery in resolving the issues, and whether the
burden or expense of the proposed discovery outweighs its likely benefit.
Information within this scope of discovery need not be admissible in
evidence to be discoverable.

Fed. R. Civ. P. 26.  Under Rule 26(b), the scope of discovery is broad. *Lewis v. ABC*

*Business Services, Inc.*, 135 F.3d 389, 402 (6th Cir. 1998).  It is well-established that

"the scope of discovery is within the sound discretion of the trial court." *Lavado v.*

*Keohane*, 992 F.2d 601, 604 (6th Cir. 1993); *Chrysler Corp. v. Fedders Corp.*, 643

F.2d 1229, 1240 (6th Cir. 1981). However, the Court may limit discovery if "the

discovery sought is unreasonably cumulative or duplicative [or] ... the burden or

expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P.

26(b)(2). "[M]ost discovery disputes are resolved by balancing the relevance,

importance, and need for the discovery on one hand against the burden, expense, and

22

possibility of waste of time and effort on the other." *El Camino Resources, Ltd. v. Huntington Nat. Bank*, 2008 WL 4833009, *1 (W.D. Mich. 2008).

Rule 37(a) of the Rules of Civil Procedures allows a party to make a motion to compel the opposing party to respond to discovery requests.  Fed. R. Civ. P. 37(a). If the *motion to compel is granted*, the court may impose sanctions, including reasonable costs and attorney fees.  Fed. R. Civ. P. 37(a)(5).

In light of the Court's ruling on the Motion to Dismiss filed by Zeta dismissing certain counts, the scope of discovery has become limited.  The parties shall meet and confer as to whether the scope of the discovery requested and the responses to the discovery will narrow because of the Court's ruling on the Motion to Dismiss.  It appears that some of the discovery requests are overly broad.  The parties are reminded that any discovery request must be relevant to the remaining claims and/or discovery which may lead to other discoverable evidence.  The Court denies the Motion to Compel without prejudice.

## IV.    MOTION FOR PROTECTIVE ORDER BY DEFENDANT (ECF No. 29)

Zeta seeks to quash ten subpoenas issued by Stone to its clients:  Progressive Insurance Company, DISH Network-Sling TV, Verizon, Rauxa, T-Mobile, Sling TV, Allstate Insurance Co, Charter Communications, TruGreen, and American Home Shield.  Zeta asserts that the subpoenas lack relevancy to the claims alleged in the

23

Amended Complaint and that a protective order is required.  Stone asserts Zeta has no standing to seek a protective order to quash the subpoenas.  Zeta replies that Stone conflates the requirements to quash a subpoena under Rule 45 with those to enter a protective order under Rule 26(c).

Rule 26(c) provides that a party or any person from whom discovery is sought may move for a protective in the court where the action is pending and that the court may, for good cause, issue an order to protect a party ***or person*** from annoyance, embarrassment, oppression, or undue burden or expense.  Fed R. Civ. P. 26(c).

"[A] party may lack standing to file a motion to quash a subpoena to a third party." *United States v. Llanez-Garcia*, 735 F.3d 483, 498 (6th Cir. 2013). Generally, a party does not have standing under Rule 45 "unless the party claims a privilege or personal right in the information sought by the subpoena." *Beard v. AAA Mich*., No. 12-10726, 2013 WL 12181776, at *1 (E.D. Mich. June 17, 2013).

None of the parties noted above are mentioned in Stone's Amended Complaint. The subpoenas seek copies of all documents and electronic communications applicable to the business relationship with Zeta, including contract for services, invoices, any communications questioning Zeta's campaign performance, methodology, treatment vs. control creation, control homogeneity, and frequency strategy.

24

Stone does not identify how the subpoenas are relevant to her claims alleged against Zeta in the Amended Complaint.  It appears at this juncture that the subpoenas to Zeta's clients are overly broad since they do not specifically address how these are relevant to Stone's allegations against Zeta.  The Court grants Zeta's Motion for Protective Order at this time.

## V.   ORDER

For the reasons set forth above,

IT IS ORDERED that Defendant's Motion to Dismiss Counts IV, V, VI, X, and XIII of the Amended Complaint **(ECF No. 22)** is **GRANTED IN PART and DENIED IN PART**.  Counts V (Public Policy), VI (Breach of Contract), X (Fraud, Misrepresentation and Silent Fraud) are **DISMISSED**.  Counts IV (Elliott-Larsen Civil Rights Act-Retaliation) and XIII (Title VII-Retaliation) remain.

IT IS FURTHER ORDERED that Plaintiff's Motion to Compel **(ECF No. 25)** is DENIED without prejudice.

IT IS FURTHER ORDERED that Defendant's Motion for Protective Order **(ECF No. 29)** is GRANTED.

IT IS FURTHER ORDERED that the parties meet and confer as to proposed dates moving forward and submit a proposed amended scheduling order via the CM/ECF proposed order function by June 7, 2023.  The Court will thereafter issue an

amended scheduling order.

s/Denise Page Hood
DENISE PAGE HOOD
United States District Judge

DATED: June 2, 2023